**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FURNITURE FACTORY ULTIMATE | ) |
| HOLDING, L.P., *et al.*, [1] | ) Case No. 20-12816 (JTD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Related to Docket No. 14** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, 364, 503, AND 507 AND FED. R. BANKR. P. 2002, 4001, 6004, AND 9014: (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION SENIOR SECURED, SUPERPRIORITY FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION; (V) MODIFYING THE AUTOMATIC STAY; AND (VI) GRANTING RELATED RELIEF**

Upon the *Debtors' Motion for Entry of an Interim and Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503, and 507 and FED. R. BANKR. P. 2002, 4001, 6004, and 9014: (I) Authorizing the Debtors to Obtain Post-Petition Senior Secured, Superpriority Financing; (II) Authorizing Use of Cash Collateral; (III) Granting Liens and Superpriority Claims; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [D.I. 14] (the **"Motion"**)[2] filed on November 5, 2020 by Furniture Factory Holding, L.L.C. (**"Holdings"**) and its affiliated debtors in the above-captioned chapter 11 cases (the **"Chapter 11 Cases"**), as debtors and debtors-in-possession (collectively, the **"Debtors"**), pursuant to sections 105, 361, 362, 363, 364, 503, and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Furniture Factory Ultimate Holding, LP (4089); Furniture Factory Holding, LLC (5055); Furniture Factory Intermediate Holding, LLC (8060); Furniture Factory Outlet, LLC (3952); Furniture Factory Outlet Transportation, Inc. (7131); Bedding Holding, LLC (7744); Bedding Intermediate Holding, LLC (6384); and Bedding, LLC (4774). The Debtors' headquarters and mailing address is: 6500 Jenny Lind Road, Space A, Fort Smith, AR 72908.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or DIP Term Sheet (defined below), as applicable.

"**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking entry of an interim order (this "**Interim Order**") and a final order (the "**Final Order**"), as applicable:

> (i)    Authorizing the certain of the Debtors, pursuant to sections 105, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 6004, and Local Rule 4001-2, to guarantee unconditionally on a joint and several basis, and subject to the terms and limitations set forth herein and in the term sheet attached hereto as **<u>Exhibit A</u>** (the "**DIP Term Sheet**") in all respects, the Debtors' obligations under the DIP Facility, consisting of a senior secured super-priority multi-draw term loan credit facility (the "**DIP Facility**"), on the terms and conditions set forth in the DIP Term Sheet (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, and, together with any ancillary and other related agreements, documents, security agreements, or pledge agreements intended to effectuate the terms of the DIP Term Sheet, including the Interim Order and the Final Order, collectively, the "**DIP Loan Documents**"[3]), by and among the Debtors, the guarantors party thereto (the "**Guarantors**") and American Freight FFO, LLC, as lender (the "**DIP Lender**"), in an aggregate principal amount of $6,540,000.

> (ii)    Authorizing the Debtor to obtain post-petition financing on a secured, priming and super-priority basis pursuant to the terms and conditions thereof, up to a

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the DIP Loan Documents.

maximum aggregate amount of $6,540,000 (the "**DIP Facility**"), pursuant to the DIP Loan Documents;

(iii)    Authorizing the Debtor to execute and deliver the DIP Loan Documents and to perform such other acts as may be reasonably necessary or desirable in order to give effect to the provisions of the DIP Loan Documents;

(iv)    Providing, pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, that all obligations owing to the DIP Lender under the DIP Loan Documents shall be accorded administrative expense status in this Bankruptcy Case, and shall, subject only to the Carve-Out (as defined below), have priority over any and all other administrative expenses arising in this Bankruptcy Case;

(v)    Granting the DIP Lender security interests in and liens on (the "**DIP Liens**") all property and assets of the Debtors, of every kind or type whatsoever, tangible, intangible, real, personal or mixed, whether now owned or hereafter acquired or arising, wherever located; all property of the estate of the Debtors within the meaning of section 541 of the Bankruptcy Code (including avoidance actions arising under chapter 5 of the Bankruptcy Code and applicable state law, subject to entry of the Final Order); and all proceeds, rents and products of the foregoing, with the exception of certain assets as expressly provided in the DIP Facility (collectively, the "**Property**") as follows:

(a)    pursuant to section 364(c)(1) of the Bankruptcy Code, allowed super-priority administrative expense claims in the Bankruptcy Case, having priority over all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all expenses and claims of the Debtors, whether heretofore or hereafter incurred, including, but not limited to, the

- 3 -

kind specified in sections 105, 326, 328, 506(c), 507(a) or 1114 of the Bankruptcy Code, subject only to the Carve-Out; without limiting the source of payments in any way, the Debtors' Property and any proceeds thereof (subject only to the Carve-Out) may be utilized to satisfy the DIP Lender's super-priority claims;

(b)    pursuant to section 364(c)(2) of the Bankruptcy Code, valid, perfected, first-priority security interests in and liens on the Property that is not subject to non-avoidable, valid and perfected liens in existence as of the Petition Date (or to non-avoidable valid liens in existence as of the Petition Date that are subsequently perfected as permitted by section 546(b) of the Bankruptcy Code), subject only to Permitted Encumbrances (as defined in the DIP Loan Documents) and the Carve-Out;

(c)    pursuant to section 364(c)(3) of the Bankruptcy Code, valid junior perfected security interests in and liens on all Property that is subject to non-avoidable, valid and perfected liens in existence as of the Petition Date, or to non-avoidable valid liens in existence as of the Petition Date that are subsequently perfected as permitted by section 546(b) of the Bankruptcy Code, subject only to the Carve-Out; and

(d)    all DIP Liens shall be senior in priority to any security interests in or liens on the Property created or granted after the Petition Date.

(vi)    Authorizing and directing the Debtor to pay, without further order of this Court, the principal, interest, fees, expenses and other amounts payable to the DIP Lender under the DIP Loan Documents, as the same become due, all as and to the extent provided in the DIP Loan Documents;

- 4 -

(vii)     Authorizing the Debtors' limited use of Cash Collateral (as defined below), solely on the terms and conditions set forth in this Interim Order and Budget (defined below);

(viii)    Vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order; and

(ix)     scheduling a final hearing (the "**Final Hearing**") within 21 days of the Petition Date (as defined below) to consider, on a final basis, the relief requested in the Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion, the DIP Term Sheet, the *Declaration of Don Roach in Support of Debtors' First Day Motions and Applications* [D.I. 13] (the "**First Day Declaration**") and the *Declaration of Michael Fixler in Support of the Debtors' Motion for Entry of an Interim and Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503, and 507 and* FED. R. BANKR. P. *2002, 4001, 6004, and 9014: (I) Authorizing the Debtors to Obtain Post-Petition Senior Secured, Superpriority Financing; (II) Authorizing Use of Cash Collateral; (III) Granting Liens and Superpriority Claims; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [D.I. 14] (the "**Fixler Declaration**"), and the evidence submitted or proffered at the interim hearing on this Motion (the "**Interim Hearing**"), including arguments of counsel; and, in accordance with Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d), and 9014 and all applicable Local Rules, notice of the Motion and the Interim Hearing having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C); and the Interim Hearing having been held and concluded on November 6, 2020; and it appearing that approval of the interim relief requested in the Motion and granted herein is necessary to avoid immediate and irreparable harm to the

- 5 -

Debtors pending the Final Hearing and is otherwise fair and reasonable and in the best interests of

the Debtors, their creditors, their estates, and all parties in interest, and is essential for the continued

operation of the Debtors' business and the preservation of the value of the Debtors' estates; and it

appearing that the Debtors' entry into the DIP Term Sheet and the other DIP Loan Documents is a

sound and prudent exercise of the Debtors' business judgment; and after due deliberation and

consideration, and for good and sufficient cause appearing therefor,

### THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[4]

A.     Petition Date.  On November 4, 2020 (the "**Petition Date**"), each of the Debtors

filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the United States

Bankruptcy Court for the District of Delaware (this "**Court**"). The Debtors have continued in the

management and operation of their businesses and properties as debtors-in-possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.

B.     No Committee.  No statutory committee of unsecured creditors (to the extent such

committee is appointed, the "**Committee**"), trustee, or examiner has been appointed in these

Chapter 11 Cases.

C.     Jurisdiction and Venue; Statutory Predicates.  This Court has core jurisdiction over

the Chapter 11 Cases, the Motion, and the parties and property affected thereby pursuant to 28

U.S.C. §§ 157(b) and 1334. Venue for the Chapter 11 Cases and proceedings on the Motion is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and other

predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 507 and 552 of the

Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Rule 4001-2.

---

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

PHIL1 9190814v.9

D.    <u>Notice</u>.  The Interim Hearing was held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rules 2002-1 and 4001-2.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier, or hand delivery, to the parties set forth in the Motion (as such, collectively, the "**Notice Parties**").  Under the circumstances, notice to the Notice Parties of the Motion, the relief requested therein, and the Interim Hearing, complies with Bankruptcy Rule 4001(b), (c), and (d) and the Local Rules, and no other notice need be provided for entry of this Interim Order.

E.    <u>Debtors' Stipulations</u>.  Subject only to the rights of parties-in-interest that are specifically set forth in Paragraph 21 below, the Debtors, on behalf of their estates, admit, stipulate, acknowledge, and agree (collectively as follows, the "**Debtors' Stipulations**"):

(1)    *1L Pre-Petition Debt*.

(a)    ***1L Pre-Petition Loan Documents***.  Pursuant to that certain *Credit Agreement* dated as of June 10, 2016 (as amended, restated, supplemented, waived, or otherwise modified from time to time, the "**1L Pre-Petition Credit Agreement**"; together with the Loan Documents (as defined in the 1L Pre-Petition Credit Agreement) and any other agreements or documents executed or delivered in connection therewith, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "**1L Pre-Petition Loan Documents**") by and among (a) Furniture Factory Outlet, LLC (the "**1L Borrower**"), (b) Furniture Factory Intermediate Holding, LLC ("**FFIH**"), (c) certain subsidiaries of the 1L Borrower from time to time party thereto (the "**Subsidiary Guarantors**"; together with the 1L Borrower and FFIH, the "**1L Pre-Petition Obligors**"), (d) Stellus Capital Investment Corporation (the "**1L Pre-Petition Agent**"), and (e) each of the Lenders (as defined therein) party thereto (in such capacity,

- 7 -

the "**Initial 1L Pre-Petition Lenders**"; together with the 1L Pre-Petition Agent, collectively, the "**1L Pre-Petition Secured Parties**"), the Initial 1L Pre-Petition Lenders agreed to provide certain credit facilities and other financial accommodations to the 1L Borrower on the terms and conditions set forth more completely therein.

(b)     *1L Pre-Petition Liens*.  As more fully set forth in the 1L Pre-Petition Loan Documents, the 1L Pre-Petition Obligors granted to the 1L Pre-Petition Agent, for the benefit of itself and the Initial 1L Pre-Petition Lenders, a first-priority security interest in and continuing lien on (the "**1L Pre-Petition Liens**") certain "Collateral" (as defined in the 1L Pre-Petition Credit Agreement), including all real and personal property, other than certain specified "Excluded Property" (as defined in the 1L Pre-Petition Credit Agreement) of the 1L Pre-Petition Obligors, as perfected by the filing of (i) that certain UCC-1 financing statement file number 2016 3499389 naming Furniture Factory Outlet, LLC as debtor and 1L Pre-Petition Agent as secured party for filing with the Secretary of State of the State of Delaware, (ii) that certain UCC-1 financing statement file number 2019 0127154 naming Bedding, LLC as debtor and 1L Pre-Petition Agent as secured party for filing with the Secretary of State of the State of Delaware, (iii) that certain UCC-1 financing statement file number 2018 5701343 naming Furniture Factory Ultimate Holding, LP as debtor and 1L Pre-Petition Agent as secured party for filing with the Secretary of State of the State of Delaware, (iv) that certain UCC-1 financing statement file number 2018 5701251 naming Furniture Factory Holding, LLC as debtor and 1L Pre-Petition Agent as secured party for filing with the Secretary of State of the State of Delaware, (v) that certain UCC-1 financing statement file number 2016 3499348 naming Furniture Factory Intermediate Holding, LLC as debtor and 1L Pre-Petition Agent as secured party for filing with the Secretary of State of the State of Delaware, (vi) that certain UCC-1 financing statement file number 2018 5700758

naming Bedding Holding, LLC as debtor and 1L Pre-Petition Agent as secured party for filing with the Secretary of State of the State of Delaware, (vii) that certain UCC-1 financing statement file number 2018 5700873 naming Bedding Intermediate Holding, LLC as debtor and 1L Pre-Petition Agent as secured party for filing with the Secretary of State of the State of Delaware and (viii) that certain UCC-1 financing statement filing ID number 40000130240236 naming Furniture Factory Outlet Transportation, Inc. as debtor and 1L Pre-Petition Agent as secured party for filing with the Secretary of State of the State of Arkansas  (collectively, as such, the "**1L Pre-Petition Collateral**").

(c)     *Assignment*.    Pursuant to that certain Assignment and Assignment and Assumption Agreement (the "**Assignment Agreement**") by and between certain of the Initial 1L Pre-Petition Secured Parties and DIP Lender, the Initial 1L Pre-Petition Secured Parties sold and assigned all of their respective rights and interests under the 1L Pre-Petition Loan Documents to the DIP Lender (in its capacity as the holder of such rights and interests, the "**Current 1L Prepetition Lender**").

(d)     *1L Pre-Petition Obligations*.    As of the Petition Date, the 1L Pre-Petition Obligors were indebted to DIP Lender (as successor-in-interest to the Initial 1L Pre-Petition Secured Parties) on account of the obligations under the 1L Pre-Petition Credit Agreement in the aggregate principal amount of not less than $21,873,846.89 (together with accrued and accruing interest, fees, expenses and other charges, the "**1L Pre-Petition Obligations**").

(e)     *1L Pre-Petition Liens and Obligations*.    The Debtors acknowledge and agree that, as of the Petition Date: (i) the 1L Pre-Petition Liens on the 1L Pre-Petition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Current 1L Pre-Petition Lender (as successor-in-interest to the Initial 1L Pre-

- 9 -

Petition Secured Parties) for fair consideration and reasonably equivalent value; (ii) the 1L Pre-Petition Liens were senior in priority over any and all other liens on the 1L Pre-Petition Collateral other than the Prior Liens (defined herein); (iii) the 1L Pre-Petition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable 1L Pre-Petition Loan Documents; (iv) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the 1L Pre-Petition Liens or 1L Pre-Petition Obligations exist and no portion of the 1L Pre-Petition Liens or 1L Pre-Petition Obligations is subject to any challenge or defense, including (by way of illustration but not limitation) avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (v) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Current 1L Pre-Petition Lender or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees arising out of, based upon, or related to, the 1L Pre-Petition Loan Documents or Assignment Agreement; (vi) the Debtors have waived, discharged, and released any right to challenge any of the 1L Pre-Petition Loan Documents or Assignment Agreement, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the 1L Pre-Petition Obligations; and (vii) the 1L Pre-Petition Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

F.    Prior Liens.  For purposes of this Interim Order, the term "**Prior Liens**" means only valid, enforceable, and non-avoidable liens and security interests in the 1L Pre-Petition Collateral that were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent

permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and which are senior in priority to the 1L Pre-Petition Liens under applicable law and after giving effect to any subordination or intercreditor agreements.

G.      Cash Collateral.  For purposes of this Interim Order, the term "**Cash Collateral**" means all "cash collateral" (as defined by section 363(a) of the Bankruptcy Code) and includes, without limitation, all of the respective cash proceeds of the DIP Collateral (as defined below) and 1L Pre-Petition Collateral in which the Current 1L Pre-Petition Lender has an interest (including, without limitation, any adequate protection lien or security interest), whether such interest existed as of the Petition Date or arises thereafter pursuant to this Interim Order, any other order of this Court (including, without limitation, the Final Order), applicable law, or otherwise.

H.      Need for Post-Petition Financing.  Based upon the pleadings and proceedings of record in these Chapter 11 Cases, the Debtors do not have sufficient available sources of working capital and financing to carry on the operations of their businesses without the DIP Facility and the use of Cash Collateral.  The Debtors' ability to operate in the ordinary course of their businesses and to finance these Chapter 11 Cases is essential to the Debtors' ability to maximize the value of the Debtors' assets through the proposed sale process for the benefit of their stakeholders.  In addition, based on the record presented at the Interim Hearing: (i) the Debtors' critical need for financing is immediate and the entry of this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors, the Debtors' businesses and their estates; and (ii) in the absence of the DIP Facility and the use of Cash Collateral, the continued operation of the Debtors' businesses would not be possible and serious and irreparable harm to the Debtors and their estates would occur.

- 11 -

I.      Budget.  The budget, annexed as **Exhibit B** hereto and incorporated by reference herein (as may be modified, supplemented or updated from time to time with the express written consent of DIP Lender) (the "**Budget**"), reflects the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from the Petition Date through and including the end of the eighth calendar week following the Petition Date, as well as any accruals of obligations incurred during such period that may become due after such period.  The Debtors believe that the Budget is reasonable under the facts and circumstances.  The DIP Lender is relying upon the Debtors' agreement to comply with the Budget, the DIP Facility, the other DIP Loan Documents, and this Interim Order in determining to enter into the postpetition financing arrangements provided for herein.  For the avoidance of doubt, all references to the Budget shall be subject in all respects to the Permitted Variance (defined below).  Any amendments or modifications to the Budget must be (i) consented to in writing by the DIP Lender prior to the implementation thereof or (ii) pursuant to an Order of this Court.

J.      No Credit Available on More Favorable Terms.  Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain sufficient debtor-in-possession financing from sources other than the DIP Lender on terms more favorable than those of the DIP Facility (as set forth in the DIP Loan Documents) and are not able to obtain unsecured credit allowable solely as an administrative expense under section 503(b)(1) of the Bankruptcy Code.  New credit is unavailable to the Debtors without providing the DIP Lender both (i) the DIP Superpriority Claims (as defined below) and (ii) the DIP Liens in the DIP Collateral (each as defined below), as provided herein and in the DIP Loan Documents.

K.      Findings Regarding the DIP Facility.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases and the parties' representations: (i) the extensions of credit under

- 12 -

of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of reasonable business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration; (ii) the DIP Facility and this Interim Order have been negotiated in good faith and at arm's length among the Debtors and the DIP Lender; and (iii) any credit extended, loans made and other financial accommodations extended to the Debtors by the DIP Lender pursuant to this Interim Order has been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code, such that the DIP Facility, the DIP Liens and the DIP Superpriority Claims shall be entitled to the full protections of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

L.      <u>Findings Regarding Cash Collateral</u>.

(i)      *Need for Cash Collateral*.  An immediate and critical need exists for the Debtors to use the Cash Collateral (in addition to amounts extended under the DIP Facility) to fund the Chapter 11 Cases, including for the payment of wages, in order to maintain business relationships with vendors and suppliers, and generally conduct their business affairs so as to avoid immediate and irreparable harm to their estates and the value of their assets.

(ii)      *Good Faith*.  The Debtors' use of Cash Collateral pursuant to this Interim Order has been negotiated in good faith and at arms' length among the Debtors and the Current 1L Pre-Petition Lender.  The Current 1L Pre-Petition Lender has agreed to permit the Debtors to use the Pre-Petition Collateral, including Cash Collateral, subject to the terms and conditions set forth herein.

M.      <u>Use of Proceeds of the DIP Facility; Use of Cash Collateral</u>.  Proceeds of the DIP Facility shall be used solely for the following purposes as and to the extent identified in the Budget

(as defined below): (i) after application of all other available cash, to fund post-petition operating expenses and working capital needs of the Debtors, including, but not limited to, those activities required to remain in, or return to, compliance with laws in accordance with 28 U.S.C. § 1930; (ii) to pay interest, fees, and expenses to the DIP Lender in accordance with the DIP Loan Documents (whether or not such amounts are reflected in the Budget); (iii) to fund fees and expenses incurred in connection with the Sale Transaction (as defined in the DIP Term Sheet); (iv) to pay permitted pre-petition claim payments; (v) to pay professional fees (as provided for in the Budget and this Interim Order); and (vi) to pay certain other costs and expenses of administration of the Chapter 11 Cases. The Current 1L Pre-Petition Lender consents to the DIP Facility as provided under the DIP Loan Documents, the use of Cash Collateral as contemplated by this Interim Order, and the provisions of adequate protection herein.

N.    <u>Adequate Protection</u>.    Pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, and as set forth in Paragraph 12 below, subject to the Review Period in Paragraph 21 below, the Current 1L Pre-Petition Lender is entitled to receive adequate protection for any diminution in the value of its interests in the 1L Pre-Petition Collateral (including Cash Collateral) resulting from: (i) the Debtors' use, sale or lease of the Pre-Petition Collateral; (ii) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; and (iii) the subordination of the 1L Pre-Petition Liens to the DIP Liens (collectively, the "**Diminution in Value**").

O.    <u>Waiver</u>.    Subject to entry of the Final Order and any Challenge Proceeding (defined below) timely commenced by a party with standing, the Debtors hereby forever release, waives and discharges the DIP Lender, together with its respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the

- 14 -

"**Released Parties**") from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, (1) any aspect of the pre-petition relationship, or any pre-petition transaction, between any Debtors, on the one hand, and any Released Party, on the other hand, or (2) any acts or omissions by any or all of the Released Parties in connection with any pre-petition relationship or transaction with any Debtors or any affiliate thereof.  The waivers described in this paragraph shall be binding on the Debtors immediately upon entry of a Final Order and shall be binding upon the Committee and all other parties in interest immediately following the expiration of the Review Period (defined below) if, prior to the expiration of the Review Period, such Committee or other party in interest has not commenced or filed a motion with this Court for authority to commence a proceeding asserting a claim or cause of action waived under this paragraph.  Subject to the $25,000 cap set forth in the DIP Term Sheet (the "**Challenge Cap**"), none of the proceeds of any extension of credit under the DIP Facility shall be used in connection with (a) any investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lender, (b) the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lender or any of its affiliates with respect to any loans, extensions of credit or other financial accommodations made to any Debtors prior to, on or after the Petition Date or (c) any loans, advances, extensions of credit, dividends or other investments to any person not a Borrower other than for certain permitted exceptions set forth in the DIP Facility.  The Cap shall only be a limitation on what is payable from the DIP Facility and pursuant to the Budget to counsel to the Committee and shall in no way limit the fees payable to counsel to the Committee.

P.    <u>Good Cause Shown</u>.  Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and such relief is in the

best interest of the Debtors, their estates, and creditors.  Absent entry of this Interim Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.  Entry of this Interim Order will, among other things, allow for the continued operations of the Debtors' existing businesses and enhance the Debtors' ability to maximize the value of their assets through the sale process for the benefit of their stakeholders.

Q.    <u>Order of the Court</u>.    Based upon these findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY, ORDERED, ADJUDGED, AND DECREED THAT:**

1.    <u>Motion Granted</u>.  The Motion is granted on an interim basis as set forth in this Interim Order.  Any objections filed with the Court or asserted at the Interim Hearing with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.    <u>Approval of DIP Facility</u>.  Pursuant to this Interim Order, the Debtors are hereby authorized to enter into, execute, and deliver all DIP Loan Documents (including, for the avoidance of doubt, the DIP Term Sheet) as may be required or requested by the DIP Lender to implement the terms or to effectuate the purposes of this Interim Order and the DIP Facility.

3.    <u>Validity of DIP Loan Documents</u>.  The DIP Loan Documents shall constitute valid and binding obligations of each of the Debtors, enforceable against each Debtor party thereto in accordance with the terms thereof.  Loans advanced under the DIP Loan Documents (the "**DIP Loans**") will be made to fund the Debtors' working capital and general corporate needs, in each such case, in the ordinary course of business to the extent permitted under the DIP Loan Documents and to pay such other amounts as are required or permitted to be paid pursuant to the

DIP Loan Documents, this Interim Order, and any other orders of this Court, all as provided for and in accordance with the Budget.

4.    <u>Authorization to Borrow; Use of Cash Collateral</u>.    The Debtors are hereby immediately authorized to (a) borrow under the DIP Facility, on an interim basis, an aggregate principal amount of up to $2,500,000.00 (the **"Interim DIP Amount"**) and (b) use Cash Collateral, in each case until the earlier of (Y) the Maturity Date (as defined in the DIP Term Sheet) and (Z) a Termination Date (as defined below).

5.    <u>Use of Proceeds</u>.    From and after the entry of this Interim Order, the Debtors shall use the Interim DIP Amount and any Cash Collateral only for the express purposes specifically set forth in this Interim Order (including, but not limited to, Paragraph M hereof), the DIP Term Sheet, and in compliance with the Budget (subject to the Budget Variances).

6.    <u>Lenders' Fees and Expenses</u>.    All fees and amounts as set forth in the DIP Loan Documents are each hereby approved in their entirety, and the Debtors are hereby authorized and directed to pay such fees and other amounts to the DIP Lender or Current 1L Prepetition Lender or such lenders' professionals in accordance with, and on the terms set forth in, the DIP Loan Documents, provided that the approval of the $200,000 prepayment premium is subject to the entry of a final order.

7.    <u>Approved Budget</u>.

(a)    *Generally.*    The proceeds of the DIP Facility (including, for the avoidance of doubt, the Interim DIP Amount) shall be used solely to pay the expenditures set forth in the Budget or amounts payable to or on behalf of the DIP Lender or Current 1L Prepetition Lender pursuant to paragraph 6 or 8 of this Interim Order.

(b)    *Budget Covenants.*

PHIL1 9190814v.9

(i)      ***Receipts and Disbursements***.   Subject to the Budget Variances (defined below): (A) the Debtors' actual total cash receipts and cash disbursements from operations, but excluding the Chapter 11 Professional Fees (as defined below) and the Lenders' Professional Fees and Expenses, shall each be adhered to on a weekly period basis and a cumulative basis for the Budget period then ending; and (B) the Debtors' disbursements for the Chapter 11 Professional Fees (which shall be reported in a manner so that the fees for each Chapter 11 Professional (as defined below) are reflected on their own line item) shall be adhered to on a cumulative basis for that portion of the Budget period then ending, even if actual payment of such Chapter 11 Professional Fees is not made until thereafter in accordance with the filing of monthly, interim, or final fee applications (and the Court's approval thereof).   For the avoidance of doubt, the Lenders' Professional Fees shall not be limited by the Budget.

(ii)      ***Budget Variances***.   Pursuant to the terms set forth in the DIP Term Sheet, and as further set forth herein, actual amounts for total cash receipts and cash disbursements may not vary from the applicable Budget by more than: (i) fifteen percent (15%) for cash receipts on a trailing two (2) week basis; (ii) ten percent (10%) for cash disbursements on a trailing two (2) week basis; or (iii) five percent (5%) on a cumulative basis for that portion of the Budget period then ended (collectively, the "**Permitted Variances**").   Permitted Variances are not cumulative beyond a rolling two-week basis; provided, however, that in the event the Debtors experience material supply chain disruptions that results in actual amounts for total cash receipts and cash disbursements for COGS to be  outside of the permitted Budget Variances, the parties hereto agree to negotiate in good faith to discuss any appropriate modification to the Budget and Budget Variances that may be necessary until such time as the Debtors' operations and inventory levels

normalize; provided further, however, that it expressly understood and agreed that the DIP Lender shall have no obligation to fund any amounts in excess of the Budget and Budget Variances.

(c)    *Budget Variance Report.*  On or before the third business day of each week, commencing with the first full week following the Petition Date, the Debtors shall deliver to the DIP Lender an Approved Budget Variance Report (as defined in the DIP Term Sheet).

(d)    *Financing Cap.*  Notwithstanding anything to the contrary in this Interim Order, the DIP Term Sheet, or any other DIP Loan Document, the DIP Lender's obligations to provide financing under the DIP Facility shall not exceed the aggregate amount of $6,540,000.00 in principal.

8.    <u>Professional Fees and Expenses</u>.

(a)    *Generally.*  Subject to payment of the Carve-Out (as defined below), the Debtors shall promptly pay or reimburse the DIP Lender and the Current 1L Pre-Petition Lender when invoiced for all reasonable and documented fees and expenses of their respective counsel (including, without limitation, local counsel) and financial advisors (the **"DIP Lender's Professionals"** and **"Pre-Petition Lender's Professionals**," respectively; the **"Lenders' Professionals**," collectively).  All such fees and expenses of the Lenders' Professionals referred to hereinafter as the **"Lenders' Professional Fees and Expenses**."

(b)    *Fee Disputes.*  None of the Lenders' Professionals shall be required to file any interim or final fee application with this Court to receive payment for their respective Lenders' Professional Fees and Expenses; <u>provided</u>, <u>however</u>, the following procedures shall apply to the payment of any Lenders' Professional Fees and Expenses incurred following the Petition Date:

      i.    copies of written invoices for requested Lenders' Professional Fees and Expenses (each, an **"Invoice"**) shall be provided to the Debtors, the Committee (if any) and to the U.S. Trustee;

- 19 -

    ii. the Invoices may be sent in summary form and redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such Invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine; each Invoice need not comply with U.S. Trustee guidelines for fee applications;

    iii. if the Debtors, Committee (if any), or U.S. Trustee object to the reasonableness of the Lenders' Professional Fees and Expenses set forth on an Invoice, and the objection cannot be resolved within ten (10) days of receipt of such Invoice, then the Debtors, Committee (if any), or U.S. Trustee, as the case may be, shall file with the Court and serve on the DIP Lender or Current 1L Pre-Petition Lender (as applicable) an objection limited to the reasonableness of, and identifying, the particular disputed Lenders' Fees and Expenses set forth on the Invoice (each, a "**Fee Objection**"); and

    iv. The Debtors shall pay within ten (10) business days after receipt of the applicable Invoice (X) the full amount invoiced if no Fee Objection has been timely filed, (Y) the undisputed portion of the Lenders' Professional Fees and Expenses reflected on any Invoice as to which a Fee Objection has been timely filed, and (Z) any amount as directed by the Court with respect to the resolution of a Fee Objection (clauses (X) through (Z), collectively, the **"Payable Professional Fees and Expenses"**).

    (c)   *Failure to Pay.* Subject to the Carve-Out, the DIP Lender shall have the right to charge the DIP Facility for any of its Payable Professional Fees and Expenses that are not timely paid, and such Payable Professional Fees and Expenses shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Term Sheet. Further, the failure to timely pay any Payable Professional Fees and Expenses shall be an Event of Default (as defined below); provided, however, and notwithstanding anything to the contrary herein, to the extent any Payable Professional Fees and Expenses for the applicable weekly Budget period would result in the Debtors having insufficient funds to make other payments reflected in the Budget for that weekly period, then the payment or charging of such Payable Professional Fees and Expenses will be

- 20 -

deferred to the next weekly period during which the Debtors have sufficient funds to pay such Payable Professional Fees and Expenses and all other payments reflected in the Budget for such weekly period, and such deferral shall not result in an Event of Default.

9.      DIP Superpriority Claims.  In accordance with section 364(c)(1) of the Bankruptcy Code, the DIP Obligations shall constitute senior administrative expense claims against each Debtor (the "**DIP Superpriority Claims**") with priority in payment over any and all administrative expenses at any time existing or arising, of any kind or nature whatsoever, including, without limitation, the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to sections 105, 326, 328, 330, 331, 503(b), 506(c) (upon entry of the Final Order), 507(a), 507(b), 726, 1113 and 1114 of the Bankruptcy Code or otherwise, and shall at all times be senior to the rights of the Debtors or their estates, and any successor trustee or other representative of the Debtors' estates in this Bankruptcy Case or in any subsequent proceeding or case under the Bankruptcy Code, subject to the Carve-Out.

10.      DIP Liens.  As security for the full and timely payment of the DIP Obligations, the DIP Lender is hereby granted, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable and fully perfected priming security interests in, and liens and mortgages (collectively, the "**DIP Liens**") upon, all existing and after-acquired tangible and intangible personal and real property and assets of each of the Debtors, and their respective estates, wherever located, and any proceeds and products thereof, including, without limitation (collectively, and as follows, the "**DIP Collateral**"):

(a) all Prepetition Collateral; and

(b) all of Debtors' existing and future acquired property and interests of any nature whatsoever, real and personal, tangible and intangible, accounts receivable, general intangibles, payment intangibles, supporting obligations, investment property, commercial tort claims, inventory, rolling stock, machinery,

- 21 -

equipment, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts and all cash contained therein, contract rights, and tax refunds of the Debtors, and all proceeds and products of all of the foregoing assets, whether tangible or intangible, whether coming into existence prior to the Petition Date or after the Petition Date; provided, however, the Interim Order does not grant, and shall not be deemed to grant, any security interests in or liens on claims and causes of action under Chapter 5 of the Bankruptcy Code and similar laws, and any proceeds thereof and property received thereby whether by judgment, settlement or otherwise (collectively, the "**Avoidance Actions**"), but proceeds of Avoidance Actions and property received thereby, whether by judgment, settlement or otherwise, shall, upon the entry of the Final Order granting such relief, constitute DIP Collateral.

11.  <u>Priority of DIP Liens</u>.  Subject to payment of the Carve-Out, the DIP Liens shall: (a) constitute first-priority security interests in and liens upon all DIP Collateral that is not otherwise subject to any valid, perfected, enforceable and non-avoidable lien in existence as of the Petition Date, pursuant to section 364(c)(2) of the Bankruptcy Code; and (b) pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, be senior to and prime all other liens and security interests in the DIP Collateral, including, without limitation, the 1L Pre-Petition Liens, the Replacement Liens (as defined below), and any lien that is avoidable, or may hereafter be avoided, pursuant to any Avoidance Action; provided however, that the DIP Liens shall be junior only to any Prior Liens, but solely to the extent such Prior Liens are valid, binding, enforceable, perfected and non-avoidable.

12.  <u>No Liens on Leasehold Interests</u>. Except as specifically permitted pursuant to any written agreement between the DIP Lender or Current 1L Prepetition Lender (or any of its predecessors in interest) and any of the Debtors' landlords, no DIP Liens or any Replacement Liens shall attach to the Debtors' real property leases or real property leasehold interests. Notwithstanding the foregoing, such liens shall attach to the proceeds of such leases and leasehold interests.

13.    <u>Adequate Protection</u>.  As adequate protection against any Diminution in Value, the Current 1L Pre-Petition Lender shall:

(a)    receive a claim to the extent of such Diminution in Value and subject to the investigation provisions in paragraph 21 of this Interim Order, having priority over any and all expenses of the kind specified in, among other sections of the Bankruptcy Code, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, and 1114, subject to (i) the Carve-Out and (ii) the DIP Superpriority Claims (the "**Pre-Petition Superpriority Claims**");

(b)    have valid, binding, enforceable and perfected liens in all DIP Collateral, subject to (i the Carve-Out (ii) the DIP Liens and (iii) any Prior Liens, in each case equal to the sum of the aggregate Diminution in Value (the "**Replacement Liens**"); and

(c)    be entitled to reimbursement from the Debtors and their estates for the fees and costs of its professionals, as provided in Paragraph 8 above.

14.    <u>Non-Waiver</u>.  The receipt by the Current 1L Pre-Petition Lender of adequate protection provided pursuant to this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Current 1L Pre-Petition Lender to seek additional forms of adequate protection at any time in the event that (a) the adequate protection provided to the Current 1L Pre-Petition Lender hereunder is insufficient to compensate for any Diminution in Value or (b) the Debtors receive post-petition financing on any terms other than those set forth in the DIP Term Sheet (or from any person or entity other than the DIP Lender or its designee).

15.    <u>Automatic Effectiveness of Liens</u>.  The DIP Liens shall not be subject to a Challenge (as defined below).  The Replacement Liens, subject to the investigation provisions in paragraph 21 of this Interim Order, and DIP Liens shall attach and become valid, perfected,

- 23 -

binding, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors, the DIP Lender or the Current 1L Pre-Petition Lender, respectively, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with a governmental unit (including, without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents or the taking of any other actions.  If the DIP Lender or Current 1L Pre-Petition Lender hereafter requests that the Debtors execute and deliver financing statements, security agreements, pledge agreements, control agreements, collateral assignments, mortgages, or other instruments and documents considered by the DIP Lender or Current 1L Pre-Petition Lender to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens or the Replacement Liens, as applicable, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, pledge agreements, control agreements, mortgages, collateral assignments, instruments, and documents and to pay all fees, taxes, and other governmental charges required to be paid as a result of or as a condition to recording or filing any such agreements, financing statements, instruments and other documents, and the DIP Lender and the Current 1L Pre-Petition Lender are hereby authorized (but not obligated) to file or record such documents without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the Petition Date.  The DIP Lender and/or the Current 1L Pre-Petition Lender may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, notices of liens or similar statements.

16.     <u>Restrictions on Additional Post-Petition Liens</u>.  Other than (a) the Carve-Out or (b) as otherwise provided in (i) this Interim Order or (ii) the DIP Term Sheet, no claim or lien having a priority superior or *pari passu* with those granted by this Interim Order or the DIP Term Sheet to the DIP Lender and Current 1L Pre-Petition Lender shall be granted at the request of the Debtors. Without limiting the generality of the foregoing, the Debtors stipulate, acknowledge, and agree they will not grant any such mortgages, security interests, or liens in the DIP Collateral (or any portion thereof) to any other parties pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, while (a) any portion of the DIP Facility, any DIP Loans, or any other DIP Obligations are outstanding or (b) the DIP Lender has any commitment under the DIP Loan Documents.

17.     <u>Carve-Out</u>.  As used in this Interim Order, the term "**Carve-Out**" shall mean all of the following:

(a)  unpaid, postpetition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such amount, with respect to the U.S. Trustee as agreed to by the U.S. Trustee or as determined by the Court plus interest pursuant to 31 U.S.C. § 3717;

(b)  the unpaid postpetition fees and expenses of the professionals retained by the Debtors and by any Committee, whose retentions are approved pursuant to orders of the Court under ("**Chapter 11 Professional Fees**" and "**Chapter 11 Professionals**," respectively), but only to the extent that Chapter 11 Professional Fees (i) are incurred prior to the giving of a notice of the occurrence of the Termination Date by the DIP Lender to the Debtors and any Committee, whether or not such fees are approved on an interim or final basis before or after the Termination Date, (ii) for each Chapter 11 Professional do not exceed the amounts set forth in the Budget for each such Chapter 11 Professional, (iii) are subsequently allowed pursuant to an order of the Bankruptcy Court, and (iv) not otherwise paid from retainers;

(c)  Chapter 11 Professional Fees incurred after the DIP Lender's transmission of notice of the Termination Date in an aggregate amount not to exceed $100,000.00, to the extent such fees and expenses are (i) subsequently allowed by the Court under sections 330, 331, or 363 of the Bankruptcy Code, and (ii) not otherwise paid from any retainers; <u>provided</u> that such notice of Termination Date is not rescinded or withdrawn; and

- 25 -

(d) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code (and subsequently approved by the Court) in an aggregate amount not to exceed $50,000.

Further, prior to the Termination Date, the Debtors are authorized to and shall fund, on a weekly basis, a trust account held by the Debtors' counsel (the "**Trust Account**") the amounts set forth in the Budget for Chapter 11 Professionals for the sole purpose of paying the fees and expenses of such Chapter 11 Professionals; provided however, that payment of such fees and expenses is subject to allowance pursuant to an Order of the Bankruptcy Court. To the extent that the Trust Account is funded, the Carve Out shall be reduced by such funded amount dollar-for-dollar.

18.     <u>Payment of Compensation</u>.  Subject to their obligations under Paragraph 16 hereof, nothing herein shall be construed as a consent to the allowance of any Chapter 11 Professional Fees (or the fees and expenses of any trustee) nor shall it limit or otherwise affect the right of the DIP Lender or the Current 1L Pre-Petition Lender or any other party in interest to object to the allowance and payment of any such fees and expenses.  Except as set forth herein, no Chapter 11 Professional Fees shall be paid absent a Court order allowing such payment pursuant to a fee application on notice or other procedure permitted by any Court order allowing interim compensation or the payment of Chapter 11 Professional Fees.

19.     <u>No Direct Responsibility for Chapter 11 Professional Fees</u>.  Subject to their obligations under Paragraph 16 hereof, neither the DIP Lender nor the Current 1L Pre-Petition Lender shall be directly responsible for the payment or reimbursement of any fees or disbursements of any Chapter 11 Professional (or, as applicable, the professionals of any chapter 7 trustee).  Subject to their obligations under Paragraph 16 hereof, nothing in the Interim Order, the Final Order, or otherwise shall be construed to obligate either the DIP Lender or the Current 1L Pre-Petition Lender in any way to pay compensation to, or reimburse expenses of, any Chapter

- 26 -

11 Professional (or, as applicable the professionals of any chapter 7 trustee) or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

20.      <u>Limitations on Use of Cash Collateral and Proceeds of the DIP Facility</u>.

(a)     *Challenges Restricted*.  Except as provided in Paragraph 20(b), neither the Cash Collateral nor any proceeds of the DIP Facility shall be used for any of the following:

> i.    to permit the Debtors, or any other party-in-interest or their representatives (including without limitation, the Committee, if any) to challenge or otherwise contest or institute any proceeding to determine (Y) the validity, perfection, or priority any lien or security interest in favor of the DIP Lender, the Current 1L Pre-Petition Lender, or their respective successors or predecessors in interest, or (Z) the validity, enforceability or amount of any obligation of any of the Debtors under the 1L Pre-Petition Credit Agreement or any other 1L Prepetition Loan Document;
>
> ii.   to commence, prosecute, or defend any claim, motion, proceeding, or cause of action against the DIP Lender, the Current 1L Pre-Petition Lender, or any of their respective affiliates, agents, attorneys, advisors, successors, predecessors in interest, or representatives (including, without limitation, any lender liability claims, subordination claims, or rights to credit bid);
>
> iii.  to commence, prosecute, or defend any claim, motion, proceeding, or cause of action to determine, disallow or challenge the obligations of the Debtors under any of the 1L Pre-Petition Loan Documents, or the DIP Loan Documents (clauses (a)i through (a)iii, each, a **"Challenge"**); or
>
> iv.   to fund acquisitions, capital expenditures, capital leases, or any other similar expenditure other than capital expenditures specifically set forth in the Budget and approved by the DIP Lender.

(b)     *Limited Investigation Permitted*.  Notwithstanding the prohibitions set forth in Paragraph 20(a) above, the Committee (if any) and its Chapter 11 Professionals (if any) shall be permitted to use not more than $25,000.00 (in the aggregate) of the DIP Facility proceeds or Cash Collateral to investigate the liens, and claims of, and potential cause of action against the Current

1L Pre-Petition Lender; provided, however, that such amount may only be used for investigative purposes and may not be used to bring a Challenge.

21.    Stipulations Binding; Conditions.

(a)    *Review Period*.    The Debtors' Stipulations shall be binding upon all creditors, equity holders, and parties-in-interest in these Chapter 11 Cases (including, but not limited to, the Committee, if any) unless both of the following occur:

> i.    an adversary proceeding is filed by a party with standing against the Current 1L Pre-Petition Lender challenging the 1L Pre-Petition Liens, 1L Pre-Petition Obligations, or otherwise asserting estate claims against the Current 1L Pre-Petition Lender (a "**Challenge Proceeding**") by (Y) any party-in-interest prior to the expiration of seventy-five (75) days from the entry of the Interim Order or (Z) the Committee, if formed, sixty (60) days after its formation (the "**Review Period**"); provided, however, that the filing of a complaint or any other pleading to adjudicate standing will toll the deadline to bring a Challenge; and

> ii.    a final, non-appealable judgment is entered against the Current 1L Pre-Petition Lender in such timely filed Challenge Proceeding.

(b)    *Passage of Review Period*.    Any party-in-interest that fails to file a Challenge Proceeding within the applicable Review Period shall be forever barred from asserting any Challenge against the Current 1L Pre-Petition Lender for itself or on behalf of the Debtors' estates, or challenging in any manner the Current 1L Pre-Petition Lender's liens and claims against the Debtors.  Without limiting the generality of the foregoing, if a Challenge Proceeding is not filed on or before the expiration of the applicable Review Period (or such other later date as extended by the prior written consent of the Current 1L Pre-Petition Lender and the DIP Lender or otherwise ordered by the Court), then the Debtors' Stipulations contained in Paragraph E of this Interim Order shall be irrevocably binding on the Debtors, the Committee (if any), and all parties-in-interest and any and all successors-in-interest as to any of the foregoing, without further action by any party or this Court, and the Committee (if any), any other party-in-interest, and any and all

- 28 -

successors-in-interest as to any of the foregoing, shall thereafter be forever barred from bringing any Challenge Proceeding (or similar action) with respect thereto.  Notwithstanding the foregoing, if a chapter 7 or chapter 11 trustee hereinafter appointed in these Chapter 11 Cases is appointed before the Review Period expires, then such trustee (i) will not be deemed to be bound by the Debtors' stipulations and releases and (ii) will have such time as the Court permits to conduct an independent investigation into the 1L Pre-Petition Liens.

(c)     *Preclusive Effect*.  Notwithstanding anything to the contrary herein, even if a Challenge Proceeding is timely commenced within the applicable Review Period by a party with standing, the Debtors' Stipulations contained in Paragraph E of this Interim Order shall nonetheless remain binding and preclusive on all other parties-in-interest (*i.e.*, all parties other than the party that has brought the Challenge Proceeding) and all successors thereto, except to the extent that any of the Debtors' Stipulations are successfully invalidated in such Challenge Proceeding.  For the avoidance of doubt, nothing in this Interim Order vests or confers on any person (as defined in section 101(41) of the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their estates.

22.     <u>Automatic Stay; Rights and Remedies Upon Event of Default</u>.

(a)     *Termination*.  Subject to the terms and conditions set forth in the DIP Term Sheet and this Paragraph 22, the DIP Facility shall terminate upon the earliest to occur of:

i.   the Maturity Date (as defined in the DIP Term Sheet);

ii.  the date on which a sale of all or substantially all of the Debtors' assets closes;

iii. upon notice to the Debtors and at the election of the DIP Lender in its sole discretion:

a.   three (3) days after the Petition Date if this Interim Order has not been entered;

- 29 -

b. twenty-five (25) days after the Petition Date if the Final Order has not been entered;

c. the occurrence and continuance of any Event of Default beyond the expiration of any applicable cure or grace period;

d. the failure of the Debtors to otherwise comply with the terms and conditions of the DIP Facility (specifically including, but not limited to, the obligations set forth in the "Sale Process" section of the DIP Term Sheet);

e. the effective date of a confirmed plan of reorganization or liquidation that provides for indefeasible payment in full in cash of all DIP Obligations or is otherwise acceptable to the DIP Lender in its sole discretion;

f. the entry of an order by the Court (X) granting relief from the automatic stay permitting foreclosure on any assets of the Debtors with a value in excess of $100,000 in the aggregate, (Y) appointing a trustee or an examiner with special powers, or (Z) dismissing or converting the Chapter 11 Cases; and

g. the filing or support by the Debtors of a plan of reorganization or liquidation that does not provide for indefeasible payment in full of all DIP Obligations and 1L Pre-Petition Obligations and/or is not otherwise acceptable to the DIP Lender in its sole and absolute discretion.

(b)     *Termination Date*.  The date on which the earliest of clauses (a)i through (a)iii above occurs is referred to hereinafter as the "**Termination Date**."  On and after the occurrence of the Termination Date, the DIP Lender is hereby authorized and to take any or all of the following actions without further notice (except the Termination Notice, as defined below), motion or application to, order of or hearing before, this Court:

i. cease making any DIP Loan advances to the Debtors;

ii. terminate, reduce or restrict any commitment to extend credit to the Debtors under the DIP Facility;

iii. terminate the Debtors' rights under this Interim Order, if any, to use Cash Collateral, except to the extent such cash may be used for the Carve-Out (provided that nothing in this Interim Order shall limit the Debtors' ability to seek to use Cash Collateral on a non-consensual basis and/or challenge whether such a Termination Date has occurred);

- 30 -

iv. declare the unpaid principal amount of all outstanding DIP Loans, all interest accrued and unpaid thereon, and all other DIP Obligations to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Debtors;

v. freeze monies or balances in the Debtors' accounts except to the extent that such cash may be used for the Carve-Out;

vi. (X) immediately set off any and all amounts in accounts maintained by the Debtors with the DIP Lender against the DIP Obligations except to the extent that such cash may be used for the Carve-Out, (Y) enforce all rights and remedies against the DIP Collateral in the possession of the DIP Lender for application towards the DIP Obligations and otherwise proceed to protect or enforce all rights and remedies of the DIP Lender under the DIP Loan Documents or applicable law, including, but not limited to, by suit in equity, action at law or other appropriate proceeding, whether for the specific performance of any covenant or agreement contained in the DIP Term Sheet (or any other DIP Loan Document) or any instrument pursuant to which the DIP Obligations are evidenced, and (Z) if such amount shall have become due, by declaration or otherwise, proceed to enforce the payment thereof or any other legal or equitable right of the DIP Lender, except to the extent necessary for payment of the Carve-Out; and

vii. take any other actions or exercise any other rights or remedies permitted under this Interim Order or the Final Order, as applicable, the DIP Loan Documents, or applicable law to effectuate the repayment of the DIP Obligations;

provided, however, that, prior to the first exercise of any right or remedy described in clauses (b)ii through (b)vii of this Paragraph 22, the DIP Lender shall be required to provide to the Debtors (with a copy to their bankruptcy counsel), counsel to the Committee (if any), and the U.S. Trustee five (5) business days' prior written notice (the "**Remedies Notice Period**") of the DIP Lender's intention to enforce any such rights or remedies (the **"Termination Notice"**).

(c)      *Automatic Stay*.  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit (A) the Debtors to grant the DIP Liens, the DIP

- 31 -

Superpriority Claim, the Replacement Liens, the Prepetition Superpriority Claim, and all other security provided for in the DIP Term Sheet or this Interim Order, and to perform such acts as the DIP Lender may request to assure the perfection and priority of the DIP Liens or the Current 1L Prepetition Lender may request to assure the perfection and priority of the Replacement Liens, and (B) the implementation of the terms of this Interim Order. The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified so that upon the expiration of the Remedies Notice Period, the DIP Lender shall be entitled to exercise and enforce all rights and remedies provided for in the DIP Term Sheet (or any other DIP Loan Document), this Interim Order or applicable law to satisfy the DIP Obligations and DIP Liens, subject to the Carve Out. During the Remedies Notice Period, the Debtor, the Committee, and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court. Unless the Court has determined that an Event of Default has not occurred and/or is not continuing or the Court orders otherwise, the automatic stay, as to the DIP Lender shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, unless otherwise ordered by the Court, the DIP Lender shall be permitted to exercise all rights and remedies under the DIP Term Sheet and this Interim Order and under applicable law (including, without limitation, with respect to its rights to enforcement actions against the Debtor, the DIP Collateral and otherwise) without further application to or order of this Court; provided further, however, that, upon receipt of any Termination Notice, the Debtors may only make disbursements in the ordinary course of business and with respect to the Carve-Out, but may not make any other disbursements (other than those consented to by the DIP Lender). Upon expiration of the Remedies Notice Period, the DIP Lender and its representatives shall be

granted access to all of the Debtors' locations in support of the enforcement and exercise of its remedies.

(d)     *Rights and Remedies Cumulative*.   The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the DIP Loan Documents or otherwise.   The DIP Lender's delay or failure to exercise any rights and remedies under any of the DIP Loan Documents or this Interim Order shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder or otherwise.

22.   <u>Continuation of Prepetition Cash Management Procedures</u>.   Except to the extent inconsistent with the express terms of this Interim Order, the Debtors shall use (and shall continue to use) a cash management system that is the same as or substantially similar to the Debtors' cash management system in place prior to the Petition Date.   Any material changes from such pre-petition cash management system must be acceptable to the DIP Lender in its sole discretion.

23.   <u>Indemnification, Release, etc</u>.   In each case, subject to entry of the Final Order:

(a)     *Indemnity*.   The Debtors are hereby authorized and directed to indemnify and hold harmless the DIP Lender, its affiliates, and their respective officers, directors, employees and agents (including all of their Professionals) in their respective capacities as such (each an "**Indemnified Party**") harmless from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, all professional fees) to which any Indemnified Party may become liable or which may be incurred by or asserted against any Indemnified Party, in each case in connection with or arising out of or by reason of any investigation, litigation, or proceeding arising out of or relating to or in connection with the DIP Facility, any obligation, or any act, event or transaction related or attendant thereto or any use or intended use of the proceeds of the DIP Facility, except to the extent the same is found in a final, non-appealable judgment by a court of

PHIL1 9190814v.9

competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct.

(b)     *DIP Release*.  The Debtors hereby absolutely and unconditionally release and forever discharge and acquit the DIP Lender and its successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns, each solely in their capacity as such (collectively, the "**DIP Released Parties**"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) or their estates and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type (in each case, arising on or prior to the date of the Final Order), whether known, unknown, asserted, unasserted, suspected, unsuspected, accured, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, in each case, arising in connection with or relating to the DIP Facility, the DIP Liens, or any of the DIP Loan Documents; <u>provided</u>, that nothing herein shall relieve the DIP Released Parties from fulfilling their obligations under the DIP Loan Documents and/or this Interim Order.

(c)     *No Lender Liability*.  Nothing in this Interim Order, any of the DIP Loan Documents, the 1L Pre-Petition Loan Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Current 1L Pre-Petition Lender of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these

- 34 -

Chapter 11 Cases (or any successor case hereto).  The DIP Lender and the Current 1L Pre-Petition Lender shall not, solely by reason of having made loans under the DIP Facility, authorizing the use of Cash Collateral, or performing any act authorized by the DIP Loan Documents or this Interim Order (as the case may be), be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in CERCLA, 42 U.S.C. §§ 9601, *et seq*., as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Loan Documents shall be in any way construed or interpreted to impose or allow the imposition upon the DIP Lender or the Current 1L Pre-Petition Lender of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

24.     Section 506(c) Waiver.  Upon entry of the Final Order, and subject to the Carve-Out, the Debtors irrevocably waive (and shall be prohibited from) asserting any surcharge claim, under sections 506(c) or 105(a) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the DIP Lender or Current 1L Pre-Petition Lender upon the DIP Collateral or the 1L Pre-Petition Collateral (as applicable) and no costs or expenses of administration that have been or may be incurred in any of these Chapter 11 Cases at any time shall be charged against the DIP Lender or the Current 1L Pre-Petition Lender or any of their respective claims or liens (including any claims or liens granted pursuant to this Interim Order).

25.     No Marshaling.  Upon entry of the Final Order, in no event shall the DIP Lender or the Current 1L Pre-Petition Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral or the 1L Pre-Petition Collateral (as

PHIL1 9190814v.9

applicable), and all proceeds thereof shall be received and used in accordance with this Interim Order or Final Order (as applicable).

26.    <u>Section 552(b)</u>.  Upon entry of the Final Order, the Current 1L Pre-Petition Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Current 1L Pre-Petition Lender with respect to proceeds, products, offspring, or profits of any of the 1L Pre-Petition Collateral.

27.    <u>Right to Credit Bid</u>.  Subject to section 363(k) of the Bankruptcy Code, the Current 1L Pre-Petition Lender and the DIP Lender shall have the right to credit bid up to the full amount of their respective claims in any sale of the 1L Pre-Petition Collateral or the DIP Collateral, as applicable, without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

28.    <u>Discharge Waiver</u>.  The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization or liquidation, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such plan provides for either (Y) the indefeasible payment in full in cash of all DIP Obligations or (Z) such other treatment of the DIP Obligations acceptable to the DIP Lender in its sole and absolute discretion.

29.    <u>Order Binding</u>.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the Debtors, the DIP Lender, the Current 1L Pre-Petition Lender, and their respective successors and assigns.  To the extent permitted by applicable law, this Interim Order shall bind any successor to the Debtors, including, without limitation, any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event

of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code.  This binding effect is an integral part of this Interim Order.

30.     <u>Survival and Effect of Dismissal or Conversion</u>.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (a) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a chapter 7 case; or (c) dismissing any of the Chapter 11 Cases; and the terms and provisions of this Interim Order as well as the DIP Superpriority Claims and the DIP Liens in the DIP Collateral granted pursuant to this Interim Order and the DIP Loan Documents (and with respect to the entry of any order as set forth in clause (b) or (c) of this Paragraph, the Replacement Liens and Pre-Petition Superpriority Claims) shall continue in full force and effect, in each case subject to payment of the Carve-Out, notwithstanding the entry of any such order. The respective rights of the DIP Lender and the Current 1L Pre-Petition Lender under the DIP Loan Documents, 1L Pre-Petition Loan Documents, or this Interim Order, shall be unaffected; and all of the respective rights and remedies thereunder of the DIP Lender and the Current 1L Pre-Petition Lender shall remain in full force and effect as if the entry of an order as set forth in clause (b) or (c) of this Paragraph had not occurred.

31.     <u>Insurance Policies</u>.  Upon entry of this Interim Order, on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral: (a) the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured; and (b) the DIP Lender shall be, and shall be deemed to be, without any further action or noticed, named as a loss payee. The Debtors are authorized and directed to take any actions necessary to have the DIP Lender be added as an additional insured and loss payee on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.

- 37 -

32.     <u>Joint and Several Liability</u>.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates; <u>provided</u>, <u>however</u>, the Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Loan Documents.

33.     <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.  Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Lender, including, without limitation, pursuant to this Interim Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by Bankruptcy Code section 364(e), and the DIP Facility, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

34.     <u>Proofs of Claim</u>.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in these Chapter 11 Cases to the contrary, or otherwise, the DIP Lender and the Current 1L Pre-Petition Lender shall not be required to file any proof of claim in these Chapter 11 Cases (or any successor case) for any claim (a) allowed in or arising under this Interim Order, or (b) arising under any DIP Loan Document or 1L Prepetition Loan Document.

35.     <u>Immediate Effect</u>.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024, any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

36.     <u>Order Controls</u>.  To the extent any provision of this Interim Order conflicts with any provision of the Motion or the DIP Term Sheet, the provisions of this Interim Order shall

PHIL1 9190814v.9

control.  The terms of this Interim Order are without prejudice to the rights of any party in interest to object to such terms at the Final Hearing.

37.    <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

38.    <u>Jurisdiction</u>.  This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the DIP Facility and this Final Order in all respects; <u>provided</u>, <u>however</u>, that in the event this Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this paragraph or is without jurisdiction, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

39.    <u>Final Hearing</u>.  The Final Hearing is scheduled for **November 25, 2020, at 10:00 a.m. (prevailing Eastern time)** before this Court.  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the Notice Parties, to any other party that has filed a request for notices with this Court, and to the Committee (if any). Any party in interest objecting to the relief sought at the Final Hearing must: (a) file its written objections with the Clerk of the United States Bankruptcy Court, District of Delaware; and (b) serve such written objections upon (i) proposed counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware 19801, (Attn: Domenic E. Pacitti; dpacitti@klehr.com and Michael W. Yurkewicz; myurkewicz@klehr.com) (ii) counsel to the DIP Lender and Current 1L Pre-Petition Lender, TROUTMAN PEPPER HAMILTON SANDERS LLP, Hercules Plaza Suite 5100, 1313 N. Market Street, Wilmington, Delaware 19801 (Attn: David B. Stratton; david.stratton@troutman.com) and TROUTMAN PEPPER HAMILTON SANDERS LLP, 600 Peachtree St. NE, Suite 3000, Atlanta, Georgia 30308 (Attn: Matthew R.

Brooks;        matthew.brooks@troutman.com        and        Matthew        G.        Roberts,

matthew.Roberts2@troutman.com) ; and (c) the Office of the United States Trustee for the District

of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware 19801, (Attn:

Benjamin Hackman; Benjamin.A.Hackman@usdoj.gov); in each case, so as to be filed, served,

and received by no later than **4:00 p.m. (prevailing Eastern Time) on November 18, 2020**.

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: November 6th, 2020**
**Wilmington, Delaware**

- 40