UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: | . Chapter 11 |
|  | . |
|  | . Case No. 20-12816(JKS) |
| FURNITURE FACTORY ULTIMATE | . |
| HOLDING, L.P., et al, | . |
|  | . 824 Market Street |
|  | . Wilmington, Delaware 19801 |
| Debtors. | . |
| . . . . . . . . . . . . . . . | . Thursday, September 16, 2021 |

TRANSCRIPT OF VIDEO HEARING RE:
FIRST AMENDED JOINT PLAN OF LIQUIDATION
BEFORE THE HONORABLE J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA ZOOM:

| | |
|---|---|
| For the Debtors: | Domenic E. Pacitti, Esq. |
| | Michael W. Yurkewicz, Esq. |
| | KLEHR HARRISON HARVEY |
| | BRANZBURG, LLP |
| | |
| For the U.S. Trustee: | Benjamin Hackman, Esq. |
| | OFFICE OF THE U.S. TRUSTEE |
| | |
| For the Official Committee of Unsecured Creditors: | L. Katherine Good, Esq. |
| | POTTER, ANDERSON & CORROON, LLP |
| | |
| | Andrew Matott, Esq. |
| | John Ashmead, Esq. |
| | Robert Gayda, Esq. |
| | Catherine LoTempio, Esq. |
| | SEWARD & KISSEL, LLP |

(Appearances Continued)

| | |
|---|---|
| Audio Operator: | Electronically Recorded by Aida Torres, ECRO |
| | |
| Transcription Company: | Reliable |
| | 1007 N. Orange Street |
| | Wilmington, Delaware 19801 |
| | (302)654-8080 |
| | Email: gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

```
APPEARANCES VIA ZOOM:   (Continued)

For Sun Capital Partners,
Inc.:                       Michael Duffy, Esq.
                            Michael Lehrman, Esq.
                            BAKER & MCKENZIE, LLP

Also Appearing:             Donald Roach
                            FURNITURE FACTORY ULTIMATE
                              HOLDING, LP

                            Timothy Boats
                            Patrick Carew
                            RAS MANAGEMENT ADVISORS, LLC

                            Angela Tsai
                            STRETTO

                            Uday Gorrepati
                            "ABI Project"

                            Huiqi Liu, Pro Se

                            Vince Sullivan
                            LAW 360

                            Taylor Harrison
                            DEBTWIRE

                            Matthew Breen
                            Stephanie Rosner
                            Paula Subda
                            U.S. BANKRUPTCY COURT
```

INDEX

|                                        | Page |
| -------------------------------------- | ---- |
| PRESENTMENT/ARGUMENT BY MR. PACITTI     | 8    |
| ARGUMENT BY MS. LOTEMPIO                | 23   |
| ARGUMENT BY MR. HACKMAN                 | 27   |
| STIPULATIONS                           | 36   |
| FURTHER ARGUMENT                       | 37   |
| COURT DECISION                         | 46   |

| EXHIBIT            | EVID. |
| ----------------- | ----- |
| Roach Declaration | 12    |
| Tsai Declaration  | 12    |

4

1          (Proceedings commence at 10:00 a.m.)

2               THE ECRO:  Counsel, you are live in the courtroom

3    and the hearing is about to begin.  Please remember to state

4    your name for the record when you speak and every time you

5    speak.  Please keep your video off and stay muted if you're

6    not speaking to the Judge, so that the Judge can concentrate

7    on the parties that are presenting at the time.  Thank you.

8               THE COURT:  Good morning.  This is Judge Stickles.

9    We're on the record in Furniture Factory Ultimate Holding,

10   Case Number 20-12816.

11              This is a hearing on confirmation --

12              MR. PACITTI:  Judge, if you're speaking, I can't

13   hear you.  I don't know if the Judge ... Katherine, can you

14   hear me?

15              THE COURT:  Can you hear me now?

16              MR. PACITTI:  Can you hear the Judge?

17              THE COURT:  I can hear you.  Mr. Pacitti, can you

18   hear me now?  No.

19       (Court and court personnel confer)

20              THE COURT:  Can you hear me now?

21              MR. PACITTI:  I can, yes, I can.

22              THE COURT:  Thank you.  Thank you for interrupting

23   me.

24              MR. PACITTI:  It's all right.

25              THE COURT:  Good morning, everyone.  This is Judge

5

1    Stickles.  We're on the record in Furniture Factory Ultimate

2    Holdings, Case Number 20-12816.  This is the hearing on

3    confirmation of the debtors' first amended joint plan of

4    liquidation.

5        I'll turn the podium over to debtors' counsel,

6    please.

7        MR. PACITTI:  Thank you, Your Honor.  For the

8    record, Domenic Pacitti and Michael Yurkewicz, who I believe

9    is on by phone, of Klehr Harrison Harvey Branzburg, on behalf

10   of the debtors.  And --

11       THE COURT:  Good morning, Mr. Pacitti.

12       MR. PACITTI:  Good morning, Your Honor.  Good to

13   see you again.

14       Your Honor, as you said, we are here on one matter

15   that's on our agenda that we filed at Docket 497, and that's

16   confirmation of our first amended joint plan of liquidation.

17       Your Honor, as we always do, we've tried to resolve

18   as many issues that have been raised as possible in advance

19   of today's hearing.  And to that end, we actually have

20   reached resolution with a number of folks, and they were the

21   informal objections of the Comptroller of Public Accounts and

22   the filed objection of the Texas taxing authorities, and we

23   resolved that through language that was inserted in the

24   proposed confirmation order that was filed at Docket 490, and

25   that's at Paragraphs 84 and 85, respectively,.

1          We'd like to thank Mr. Hackman at the outset

2     because we've been going through this case with him and

3     dealing with a lot of issues behind the scenes, and he's

4     worked, as he always does, with us hand in hand, to try to

5     resolve issues and limit things that we might need to bring

6     to the Court for determination, and this case was no

7     different than our experience with Mr. Hackman.  So we really

8     appreciate all the effort he's put into these cases

9     throughout, including at the disclosure statement hearing and

10    leading up to plan confirmation.

11         And in that vein, we continued to try to narrow, as

12    best we could, those issues with the United States Trustee,

13    and we have made some progress and resolved several issues.

14    And in fact, Your Honor, we resolved another one literally

15    minutes before we all joined on the Zoom call today.

16         We did insert in Paragraph 86 of the proposed

17    confirmation order additional language that resolves various

18    issues with Mr. Hackman, and they relate -- and we'll address

19    it later -- but they specifically relate to a couple of

20    matters.  And there's one other or two other additions that

21    we'll make to the confirmation order that we'll address

22    later.

23         But what I think we're down to is, effectively, the

24    third-party release, whether it's consensual is appropriate

25    or not, and the exculpation provisions, in terms of the time

1    period covered, and I guess the interplay with a provision in

2    the trust agreement as it relates to that.  But I think the

3    others have been resolved, Your Honor, so at least that's

4    good news.

5              THE COURT:  Thank you.  And I appreciate the

6    parties working together.  I realize it takes a lot of

7    effort, and I'm glad there's a good line of communication and

8    you've worked to resolve matters.

9              MR. PACITTI:  Thank you, Your Honor.  We keep

10   trying to do that.

11             So, Your Honor, if it pleases the Court, I would

12   propose to proceed as follows:  Perhaps just do like a brief

13   overview of the plan and the BS process and how we got to

14   leading up to today, moving on to the evidentiary record in

15   support of confirmation, and then address the remaining

16   objections of Mr. Hackman, and then turn it over to folks who

17   may want to speak in favor of the plan.  And then I'm sure

18   Mr. Hackman would like to address his objections.  And I'm

19   just wondering:  Is that an acceptable approach to Your

20   Honor?

21             THE COURT:  Certainly.

22             MR. PACITTI:  Does that make sense.  Okay.

23             THE COURT:  That makes --

24             MR. PACITTI:  Great.

25             THE COURT:  -- perfect sense.

1          MR. PACITTI:  Awesome.

2          So, Your Honor, back on June 3rd of 2021, after

3    working closely with the committee's counsel Mr. Gayda and

4    Ms. LoTempio, Mr. Samis and Ms. Good, the debtors filed their

5    joint Chapter 11 plan of liquidation, which was at Docket

6    375.  We also filed the disclosure statement with respect to

7    that plan at Docket 376.  And we filed our disclosure

8    statement and solicitation procedures motion at Docket 377.

9          After they were filed, as Mr. Hackman always does,

10   he gives -- he sends us an email with his thoughts and his

11   comments, and we tried to work through all of those and

12   continued discussions with the committee and up until July

13   20th of 2021, where we made various changes to the plan, the

14   disclosure statement, the disclosure statement order, and the

15   exhibits attached to that order with respect to the

16   solicitation packages.

17         And we filed, on July 20th, our first amended joint

18   Chapter 11 plan at Docket 412, the disclosure statement with

19   respect to that plan at Docket 414, redlines with respect to

20   each of those at Dockets 413 and 415 respectively.  And we

21   filed a notice of a proposed revised order with revised

22   exhibits with respect to approval of the disclosure statement

23   and the solicitation materials.

24         Your Honor, on July 23rd, we were in front of Your

25   Honor for the disclosure statement hearing.  And afterwards,

1       Your Honor entered an order approving the disclosure

2       statement at Docket 425.  If Your Honor recalls, it contained

3       further changes that Your Honor requested with respect to the

4       various notices and ballots and the like.

5              Consistent with that order, Your Honor, on July

6       28th, the debtors filed the solicitation version of the plan

7       at Docket 430, the solicitation version of the disclosure

8       statement at Docket 431, and we filed the confirmation

9       hearing notice at Docket 433.

10             Your Honor, those solicitation materials were

11      served by Stretto, consistent with the disclosure statement

12      approval order, as reflected in Stretto's affidavit of

13      service regarding those solicitation packages.  It was filed

14      on August 4th at Docket 453.

15             Additionally, Your Honor, the debtors published the

16      confirmation hearing notice in the New York Times National

17      Edition on July 30th, in compliance with the disclosure

18      statement order and Bankruptcy Rule 2002.  And that's

19      evidenced by the affidavit of publication that was filed on

20      August 2nd, at Docket 446.

21             Additionally, Your Honor, and in further compliance

22      with the disclosure statement order, on August 31st of 2021,

23      the debtors filed and served a notice of plan supplement at

24      Docket 481.  That notice contained a copy of the liquidating

25      trust agreement and declaration of trust as Exhibit A, the

1    identification of the liquidating trustee as Exhibit B, and

2    the identification of the liquidation trust advisory board

3    members as Exhibit B.  Those pleadings also set forth the

4    proposed compensation for the plan -- the liquidating

5    trustee, as well.

6          Your Honor, the voting deadline in this case was

7    September 8th of 2021.  And as reflected in the declaration

8    of Angela Tsai from Stretto  that was filed at Docket 488 on

9    September 13, 2021, there were four classes that could vote

10   on the plan.

11         Classes 4, 5, and 6 did not vote on the plan and

12   did not otherwise object to the plan.

13         Class 7, which is our general unsecured claim

14   class, voted overwhelmingly in favor of the plan.  It was 95

15   percent of those who voted, voted in favor, in terms of

16   number of votes; and 99.82 percent of folks, in terms of the

17   amount of claims, voted in favor of the plan.

18         Your Honor, in support of plan confirmation, on

19   September 13th, the debtors also filed the declaration of

20   Donald V. Roach, who is the debtors' COO and CFO, in support

21   of confirmation at Docket 489.

22         We also filed our memorandum of law in support of

23   confirmation at Docket 491 and we filed a notice of proposed

24   confirmation order at Docket 490.

25         Your Honor, briefly, the plan is effectively the

1    continuation of the wind down of the debtors' business and

2    its affairs and the continued liquidation of the remaining

3    assets of the debtor.

4         The plan provides that a plan liquidating trustee

5    will be appointed, as selected by the committee; that that

6    liquidating trustee will:

7         Receive the "liquidation trust assets," as defined

8    in the plan;

9         Establish operating and claims reserves, as are

10   necessary to carry out the terms of the plan;

11        Perform claims reconciliation process;

12        Prosecute or settle or abandon any of the retained

13   causes of action;

14        And then, ultimately, calculate and make

15   distributions under the plan.

16        And that's sort of a brief overview of what we've

17   put forth before the Court today.

18        Your Honor, in terms of the evidentiary record --

19   and I did ask Mr. Hackman if he would agree, and he did agree

20   that he would -- that we could move into evidence, in terms

21   of the direct case, the voting declaration of Ms. Tsai, who's

22   here on the Zoom call today, at Docket 488, and the

23   declaration of Mr. Roach that was filed at Docket 489, and

24   Mr. Roach is on the call, as well, today.  So we would move

25   those into evidence.

1          THE COURT:  Let me ask.  Could Ms. Tsai and Mr.

2     Roach make themselves available on Zoom?  I see you're both

3     on Zoom.

4          Does anyone objection to the admission of the Roach

5     declaration at Docket Number 489 or the Tsai declaration at

6     Docket 488 for purposes of the debtors' case-in-chief in

7     connection with confirmation of the plan today?

8          (No verbal response)

9          THE COURT:  I hear none.  The declaration is

10     admitted.

11          (Roach Declaration received in evidence)

12          (Tsai Declaration received in evidence)

13          THE COURT:  Is there any party participating today

14     that expects to cross-examine Mr. Roach or Ms. Tsai regarding

15     the content of their declarations?  Okay.  Hearing none, the

16     deck --

17          MR. HACKMAN:  Your Honor, this is Ben Hackman.

18          THE COURT:  Yes, Mr. Hackman.

19          MR. HACKMAN:  I'm sorry, Your Honor.  May it please

20     the Court.

21          THE COURT:  Good morning.

22          MR. HACKMAN:  I would like to cross-examine Ms.

23     Tsai and Mr. Roach briefly --

24          THE COURT:  Okay.

25          MR. HACKMAN:  -- if I may --

1          THE COURT:  Okay.

2          MR. HACKMAN:  -- at the appropriate time.

3          THE COURT:  All right.  Thank you.

4          Mr. Pacitti.

5          MR. PACITTI:  Sure.  Your Honor, we would also, I

6    guess, move into evidence or ask Your Honor to take judicial

7    notice of the affidavits of service with respect to

8    solicitation at Docket 453, the affidavit of publication at

9    Docket 446, and the plan supplement filing at Docket 481.

10         THE COURT:  So noted.

11         MR. PACITTI:  Your Honor, I guess, given that Mr.

12   Hackman would like to cross-examine, I was going to get into

13   sort of just the general requirements of confirmation and

14   address his objections.  I didn't know if you wanted to hear

15   the cross-examination first, or would you like us to proceed

16   through the argument and address any objections first?

17         THE COURT:  Could we -- could I hear the argument

18   first?

19         MR. PACITTI:  Sure.

20         THE COURT:  And then Mr. Hackman, in the context of

21   the argument, would you like to cross-examine Ms. Tsai and

22   Mr. Roach?  Does that work for you?

23         MR. HACKMAN:  Whatever pleases the Court, Your

24   Honor.

25         THE COURT:  Okay.

1          MR. HACKMAN:  I'm happy to proceed however you

2    would like.  Thank you.

3          THE COURT:  Let's hear argument first.

4          MR. PACITTI:  Okay.  Thank you, Your Honor.

5          Your Honor, as I mentioned previously, the proposed

6    confirmation order reflects the resolutions with various of

7    the objecting parties, including most of the objections of

8    Mr. Hackman.  And we believe that we have satisfied the

9    provisions of Section 1129 of the Bankruptcy Code by a

10   preponderance of the evidence.  We believe that the plan

11   complies with the relevant provisions of the Code and the

12   Rules and non-bankruptcy law.  And as set forth in our

13   memorandum and in Mr. Roach's declaration, the plan fully

14   complies with the requirements of Sections 1122, 1123, and

15   1129.

16         And Your Honor, I know we have argument to make,

17   so, rather than reciting all of the sort of nuts-and-bolts

18   plan confirmation requirements, we'll just rely on our

19   memorandum of law, the record, and Mr. Roach's declaration

20   and Ms. Tsai's declaration, and we'll address the remaining

21   objections of Mr. Hackman, if that's okay.

22         THE COURT:  That's fine.

23         MR. PACITTI:  So, Your Honor, with respect to the

24   language that resolves the remaining objections, Paragraph

25   86, what we have agreed with Mr. Hackman is that we would

1    include an additional provision that says, pursuant to

2    Section 1141(d)(3) of the Bankruptcy Code, neither the plan

3    or this order shall be deemed to provide the debtors a

4    discharge.  That was one of the objections that Mr. Hackman

5    raised in the context of Article (ix)(A), which was the 9019

6    settlement feature of the plan, which the language already

7    addresses.

8            Additionally, the language at -- the filed

9    provision at Paragraph 86 provides that any persons or

10   entities that are set forth on the voting declaration at

11   Exhibit B who packages were undeliverable would not be deemed

12   a releasing party, and that seemed appropriate, Your Honor.

13   We're certainly not seeking to impose a consensual release on

14   folks who didn't get notice.  So it's -- those folks are

15   carved out of that release.

16           THE COURT:  And that is what was in your

17   confirmation brief.

18           MR. PACITTI:  Yes, Your Honor.

19           THE COURT:  Okay.

20           MR. PACITTI:  And then the additional language that

21   we agreed to, leading right up to the hearing, is, I guess

22   with -- it goes to sort of the objection regarding the scope

23   of the release.  And that's specifically at Section -- or

24   Article (ix)(D)(2) of the plan.  We, along with the

25   committee, have agreed to remove -- or put in the

1    confirmation order that the language will be removed that:

2               "-- upon any other act or omission, transaction,

3               agreement, event, or other occurrence taking place

4               on or before the effective date."

5          That language appears at like -- I think it's --

6    one, two, three -- perhaps the third line up at the bottom of

7    that paragraph, Your Honor.

8          THE COURT:  Okay.

9          MR. PACITTI:  Mr. Hackman was concerned that that

10   seemed to be over-broad and perhaps go beyond what the scope

11   of the release provided above.  So we're happy to take out

12   that language, and I think that that would resolve his

13   objection, as it relates to the scope of the release.

14         THE COURT:  Could you read that language to me one

15   more time, please?

16         MR. PACITTI:  Sure, Your Honor.  I'm working off of

17   my cribbed notes.  I don't have the actual page of --

18         THE COURT:  That's all --

19         MR. PACITTI:  -- the -- where the --

20         THE COURT:  I under -- I found the section.  I just

21   need to you to read me the language again.

22         MR. PACITTI:  Yeah.  It's -- it begins, I think

23   it's the fourth or fifth line up.

24               "-- upon any other act or omission, transaction,

25               agreement, event, or other occurrence taking place

1          on or before the effective date."

2          It's that language --

3          THE COURT:  Yes.

4          MR. PACITTI:  -- that we will strike from the

5   release provision.

6          THE COURT:  Okay.

7          MR. PACITTI:  Okay.

8          THE COURT:  Thank you.

9          MR. PACITTI:  You're welcome, Your Honor.

10         So, Your Honor, I think what that does is it leaves

11  us with, as I said, the two remaining issues.

12         And with respect to the third-party release

13  provisions and whether they're consensual or not, first of

14  all, Your Honor, we're not seeking non-consensual releases;

15  rather, we believe that the structure of the plan, the

16  solicitation procedures, the various notices and ballots

17  approved at the disclosure statement hearing are all

18  sufficient to establish that the third-party releases here

19  are, in fact, consensual releases.  And as we've set forth in

20  our response to the objections in our brief, there is ample

21  authority from courts in this district that provide that

22  consent itself, and not affirmative consent, is an

23  appropriate standard for consensual third-party releases.

24         Now, Your Honor, we're mindful of the holdings in

25  Washington Mutual and in the Emerge case.  But what we do is,

1    instead, we argue that those decisions, number one, are

2    controlling on each of the judges in our district; and that,

3    likewise, there's ample authority in this district with other

4    courts in this district that follow Indianapolis Downs and

5    acknowledge that, when you have a process that allows you to

6    check a box to opt out of a release or otherwise provide for

7    an objection mechanisms for objecting to a third-party

8    release, that it's permissible, so long as those methods are

9    conspicuous and set forth in the various notices and ballots.

10   And we cite to those cases in our brief, Your Honor, and I

11   won't go through each of them.

12          I do want to note that, however, recently, Judge

13   Goldblatt addressed these issues in the Alex and Ani case,

14   albeit at the disclosure statement stage of the case.  But he

15   stated, in ruling on the disclosure statement and the

16   approval of the appropriateness of the opt-out provisions

17   that he was persuaded, as a general proposition, that

18   parties-in-interest in a bankruptcy case are affected by what

19   happens in a plan, and that they -- and if they have a

20   problem with what's happening to them under the plan, it's

21   incumbent on them to say so; and that, so long as disclosure

22   is sufficiently obvious and conspicuous and that the third

23   party has the opportunity to opt out, it's appropriate to

24   treat the failure to do so as evidence of consent.

25          He also indicated, Your Honor, that approving a

1    disclosure statement that has all of these features -- and

2    certainly, it was at that stage that he was making this

3    determination, and then later confirming a plan -- or not

4    confirming a plan that went down that road of opt-out

5    provisions.  In his mind, it was just -- and I'll see how he

6    phrased it is "it's a strange way to run a railroad," is what

7    he said.

8         And we agree with him today here, Your Honor.  Your

9    Honor, here, each of the notices of the confirmation hearing

10   -- which was a matrix mailing -- each of the ballots, each of

11   the nonvoting notices contained conspicuous language about

12   the releases, contained specific conspicuous direction about

13   opting out and what would happen if you did not opt out or

14   otherwise object to the release.  And in fact, Your Honor

15   asked for additional disclosure, which we were happy to do,

16   and we made those changes in the various notices and ballots.

17        More importantly, Your Honor, the process actually

18   worked here.  As Exhibit B of the voting declaration sets

19   forth, of the 81 ballots cast on -- in the solicitation

20   process, 18 of those ballots chose to opt out of the release.

21   And in fact, one ballot that was returned, the party chose to

22   abstain from voting either for or against the plan, but

23   nevertheless opted out of the release.

24        So, Your Honor, we really believe that, because of

25   the clear and conspicuous language in the various notices and

1    ballots, the evidence that the process actually worked and

2    parties, in fact, opted out of releases, that we provided

3    that folks who did not get notice by undeliverable

4    solicitation packages not being bound by virtue of the

5    revised language in the order, we believe that the third-

6    party releases are, in fact, consensual, and that Your Honor

7    should follow Judge Shannon's Indianapolis Downs case and the

8    other cases that follow his direction in this district and

9    overrule the U.S. Trustee's objections and approve the third-

10   party releases as consensual releases.

11           With respect to the exculpation time period, Your

12   Honor, the plan's exculpation provision does arguably

13   contemplate some prospective terms because the definition of

14   "exculpated claim" in the plan includes any claim arising

15   after the petition date and on or before the closing of the

16   Chapter 11 cases.  Mr. Hackman believes that this should just

17   stop as of the effective date of the plan.

18           Number one, we think, first of all, that this type

19   of a -- if you want to even call it "prospective" type of

20   exculpation is entirely permissible under the facts here and

21   under the case law.  Like on a practical level, Your Honor,

22   the prospective exculpation creates a positive incentive,

23   right?  For fiduciaries to carry out and implement a plan

24   and, particularly here, a liquidating plan, where this is not

25   a reorg where, you know, we go effective and we close the

1    case in a week and there's a reorg entity outside of the

2    bankruptcy operating its business and not dealing with

3    anything anymore to do with the Bankruptcy Court.  This is a

4    different animal, right?  This is a liquidating plan.  And

5    notwithstanding that there is an effective date, there is

6    still more to do in this case.

7           So the trustee obviously points out correctly that

8    the exculpation should be limited to estate fiduciaries that

9    served during the Chapter 11 proceedings.  We're not arguing

10   with that, Your Honor.  What we're saying is that, number

11   one, the Chapter 11 proceedings aren't finished as of the

12   effective date.  The exculpation here actually is limited to

13   those parameters.  the exculpated parties here are the

14   debtors, the committee, the members of the committee, solely

15   in their capacities as such, and the liquidating trustee.

16          The real disagreement here lies that -- where the -

17   - is that the debtors contend that the facts are that the

18   Chapter 11 proceedings simply don't stop on the effective

19   date.  The liquidating trustee is an estate fiduciary.  Under

20   the plan, he's taking over the role of the debtors post-

21   effective-date to continue the wind down of the affairs of

22   the debtor, to continue to liquidate the remaining assets, to

23   bring causes of action, to file tax returns, to reconcile

24   claims, and to ultimately make distributions under the plan.

25   All of those functions are core to what a Chapter 11

1    proceeding is, Your Honor.  So I don't think just arbitrarily

2    -- sorry, sorry -- picking the effective date in the context

3    of these cases makes sense, in terms of what the scope of the

4    exculpation provision should cover.

5              Further, Your Honor, there's courts in this

6    district that often confirm plans with similar provisions.

7    And we cite the SFP case, the Orexigen case, and the Relay

8    Company case in our brief, and we will rely on those.

9              So, Your Honor, we believe that, because the

10   exculpation is limited to the estate fiduciaries that covers

11   a time period, albeit post-effective-date, but a period that

12   encompasses the Chapter 11 proceedings and the functions of

13   the Chapter 11 proceedings, that Your Honor should overrule

14   the U.S. Trustee's objections and approve the exculpation

15   provisions of the plan.

16             Your Honor, that's all I have, in terms of

17   argument.  I didn't know if anyone else wanted to speak up in

18   favor of the plan, but ...

19             THE COURT:  Yeah, let me hear from anyone who wants

20   to speak in favor of the plan, and then I would like to hear

21   from Mr. Hackman.

22             MS. LOTEMPIO:  Good morning, Your Honor.  Catherine

23   LoTempio, Seward & Kissel, on behalf of the Official

24   Committee of Unsecured Creditors.

25             THE COURT:  Good morning.

1          MS. LOTEMPIO:   Good morning.

2          First, the committee just wanted to express our

3    thanks to the parties involved in this case, including all of

4    the professionals, the Office of the United States Trustee,

5    and Your Honor.  With the hard work of everyone involved, we

6    are pleased to be here today presenting a mostly consensual

7    plan, with only a few minor open points that Mr. Pacitti

8    addressed.

9          And the committee is in agreement with the debtors

10   that the plan is in the best interests of the estate and

11   should be confirmed today.  The plan really is a culmination

12   of the successful sale of the debtors' assets to American

13   Freight and an implementation of a settlement as part of that

14   sale that provided the debtors cash to remain in the estates,

15   which now permits us to fund a liquidation trust.

16         So, as the U.S. Trustee pointed out, the amount to

17   be distributed to unsecured creditors today remains

18   uncertain.  But the U.S. Trustee focused only on the lower

19   end of possible distributions.  And with the liquidation

20   trust in place, the liquidation trustee will be in -- well

21   positioned to pursue the retained causes of action that have

22   been preserved for the benefit of the states, which, if

23   successful, could provide a meaningful distribution to

24   creditors.  This was something that was not a certain

25   possibility on the petition date.

1    So I know Mr. Pacitti addressed the U.S. Trustee's

2 objections, and I'll briefly just address them, as well, and

3 try not to repeat too much of what Mr. Pacitti said.  We also

4 -- the committee also joins in the arguments of the debtors.

5    So, briefly, with respect to the U.S. Trustee's

6 objection to the consensual third-party releases, the --

7 here, we just agree with Mr. Pacitti's observation that all

8 creditors receiving ballots were made aware of their ability

9 to opt out of the releases and the consequences for not

10 returning the ballot.

11    The opt-out nature of the ballots was approved in

12 connection with the disclosure statement, and creditors could

13 also file an objection to the plan, in order to not be a

14 releasing party under the plan.  And as Mr. Pacitti noted, I

15 mean, the opt-out function of the releases did work in this

16 case and we did have creditors opting out.

17    So we respectfully submit that the creditors who

18 are properly (indiscernible) of their rights and did not opt

19 out of the releases should be held to have consented to the

20 releases and ask that Your Honor overrule the United States

21 Trustee's objection and approve the third-party releases.

22    With respect to the temporal scope of the

23 exculpation clause, we would also note that the exculpation

24 clause is limited to estate fiduciaries acting in their

25 fiduciary capacity; has a carveout for fraud, wilful

1    misconduct, and gross negligence.  And I think the debtors

2    explained this in their confirmation brief, but an

3    exculpation clause is sort of separate and distinct from a

4    release of liability, which does have a temporal

5    (indiscernible)

6         Instead, an exculpation clause sets a standard for

7    liability that applies to estate fiduciaries in the context

8    of the entire Chapter 11 case.  And courts in this district

9    have routinely approved exculpation clauses that are limited

10   to estate fiduciaries in Chapter 11 (indiscernible) post-

11   effective-date.  And I think the debtors have cited to some

12   of those cases in their confirmation brief.

13        And then Mr. Pacitti also noted that these Chapter

14   11 cases don't end with the effective date.  So, here, the

15   plan provides for claims administration, distribution,

16   pursuit of causes of action, all to occur post-effective-

17   date.  And we believe the exculpation clause should function

18   to equally apply the same standard of liability for estate

19   fiduciaries who are acting within the scope of their duties

20   during the entirety of the Chapter 11 proceedings.

21        THE COURT:  What is the anticipated effective date

22   in this case?

23        MS. LOTEMPIO:  I'll defer to Mr. Pacitti on that.

24        MR. PACITTI:  I think we were contemplating the end

25   of the month, Your Honor.

1          THE COURT:  Okay.  Thank you.

2          MS. LOTEMPIO:  Yeah.  And just lastly, I think more

3   to the point here is that we believe the U.S. Trustee's

4   concerns with the temporal scope of the exculpation clause

5   are really, truly resolved by the actual language contained

6   in the provision, which is really only limited to post-

7   effective-date actions that are necessary for the

8   implementation and administration of the plan.  So exculpated

9   parties here are not getting exculpation indefinitely for all

10  actions, but instead, the time period for which they

11  performed their duties and obligations under the plan.  And I

12  would just note that limiting the scope of the exculpation to

13  pre-effective-date actions would render meaningless these

14  administrative and implementation clauses contained in the

15  exculpation clause.

16          And I think Mr. Pacitti mentioned, but -- this, but

17  when faced with a similar objection from the U.S. Trustee in

18  the SFP Franchise case, Judge Dorsey agreed that an

19  exculpation clause was properly limited where it applied only

20  to those actions of a fiduciary in connection with the

21  implementation and execution of a plan after the effective

22  date.  So we respectfully submit that this is the correct

23  interpretation of the exculpation clause and ask Your Honor

24  to overrule the United States Trustee's objection on this

25  point.

1        This is all I have, unless Your Honor has any

2   questions.

3        THE COURT:  I do not.

4        Does anyone else wish to be heard in support of the

5   plan?

6      (No verbal response)

7        THE COURT:  Hearing none, I'd like to hear from Mr.

8   Hackman, I'd like to hear from the U.S. Trustee regarding

9   their objection.  Good morning, Mr. Hackman.

10       MR. HACKMAN:  Good morning, Your Honor.  Can Your

11  Honor hear me okay?

12       THE COURT:  Yes, I can.

13       MR. HACKMAN:  Thank you.

14       I'd like to start by thanking counsel for working

15  with us to resolve parts of the objection that we filed to

16  confirmation.  The -- as counsel indicated, the two sort of

17  broad open issues at this point for us are the third-party

18  releases and the exculpation.

19       We submit that the third-party releases should not

20  imposed on general unsecured creditors in Class 7 who did not

21  return a ballot.  As I read the numbers from Stretto, the

22  solicitation package was sent to about 557 general unsecured

23  creditors in Class 7; 81 of them voted, 51 packages were

24  undeliverable.  And the debtors, as Mr. Pacitti mentioned,

25  are agreeing that those 51 creditors whose solicitation

packages were undeliverable will not be releasing parties.

But even after subtracting out those 51 members of Class 7, about 84 percent in amounts -- in numb -- I'm sorry -- 84 percent in number and 67 percent in amount of Class 7 creditors did not return a ballot. But the debtors want to impose third-party releases on those creditors in virtue of the fact that they took no action.

Inaction is not consent. Judge Walrath indicated that in Washington Mutual, Judge Owens indicated it in Emerge Energy Services, and the Bankruptcy Court for the Southern District of New York indicated that in the Chassix and SunEdison cases. Although, as counsel pointed out, there are cases that reach a different conclusion, such as Indianapolis Downs. If I have my dates right, Indianapolis Downs precedes Emerge Energy, Chassix, and SunEdison.

We submit that carelessness, inattentiveness, mistake, or even problems with mail delivery are alternatives -- alternate explanations for why creditors may not have returned ballots. And carelessness or inattentiveness may exist here because this case is so thin.

The debtors' assets were significantly under-secured. American Freight FFO bought the debtors' assets for a purchase price that did not really come close to paying off the first lien debt. I understand that American Freight FFO is waiving its deficiency claim. But even after that, the

1   debtors will need to significantly reduce their 503(b)(9)

2   claims pool.  And I understand the committee intends to

3   object to Class 5 and Class 6 claims as part of a strategy

4   for getting a distribution to unsecured creditors in Class 7.

5        As we sit here today, as I read Mr. Roach's

6   confirmation declaration, Paragraph 35 would suggest that

7   it's possible some administrative claimants may need to take

8   a haircut.

9        In the SunEdison case, the New York Bankruptcy

10  Court held that creditors who were eligible to vote, but did

11  not vote, had not consented to the third-party releases.  The

12  Court wrote that inaction may have been explained by what was

13  described as the plan's, quote, "meager recovery," for which

14  unsecured creditors was less than three percent.  And that's

15  576 B.R. at Page 461.

16       In this case, 3 percent is the high-end projection

17  for unsecured creditors.  The low-end projection is two-

18  hundredths of 1 percent.  That's not a penny on the dollar;

19  that's a penny on $50.  Class 7, as a whole, is projected as

20  being owed about $30 million in the disclosure statement.  If

21  they get a .02 percent distribution, they would be sharing

22  pro rata in about $6,000.

23            THE COURT:  But Mr. Hackman --

24            MR. HACKMAN:  The plan --

25            THE COURT:  -- you would agree --

1          MR. HACKMAN:  -- also says that --

2          THE COURT:  -- I don't need to get to that point if

3     these releases are consensual.

4          MR. HACKMAN:  Well, Your Honor, we submit that the

5     debtors have not shown that they're consensual.  We submit

6     that simply not taking action is not a manifestation of

7     consent to the releases.  And we submit that, because the

8     recoveries, the projected recoveries in this case are so

9     uncertain and so small, that that could lead to indifference

10    or inaction by creditors in determining not to return a

11    ballot.

12         The other point I would make is the plan's

13    distribute -- the plan's *de minimis* distribution threshold is

14    $50.  And if the distribution tends towards the low end at

15    .02 percent, and if my math is right, any Class 7 creditor

16    owed less than $250,000 would not get a recovery under the

17    plan because their distribution would fall under the *de*

18    *minimis* threshold.  The only -- it's possible that only the

19    largest unsecured creditors would receive a distribution

20    under this plan.

21         Mr. Pacitti referenced the Alex and Ani decision --

22    bench ruling I gather -- from Judge Goldblatt.  I would note

23    that that transcript appears to have been at a hearing held

24    on August 20th.  This disclosure statement was approved a

25    month before that, on July 23rd.  And our office had given

1    plan and disclosure statement comments to debtors' counsel a

2    month before that, on June 24th, and we raised the third-

3    party release concern with counsel then.  So, for counsel to

4    cite a hearing transcript that was two months after we had

5    given our comments and almost a month after Your Honor had

6    already approved the disclosure statement and solicitation

7    procedures, to say that the U.S. Trustee should have raised

8    the consent issue then, we think is not fair.

9         I would also observe that Washington Mutual and

10   Emerge Energy are confirmation decisions, not disclosure

11   statement decisions.

12        And we submit that, for those reasons, general

13   unsecured creditors who have not returned a ballot should not

14   be deemed to consent to the third-party releases.

15        We also submit that the releases are non-consensual

16   as to the debtors' current and former employees.  The debtors

17   closed more than half of their stores pre-petition.  And as I

18   read Paragraph 4 of Mr. Roach's confirmation declaration, the

19   debtors had 270 employees on the petition date.  Pre-

20   petition, that number was 675 employees.  And by the way

21   Article 1(b), an in bravo, (87) is worded, at Part (f), all

22   of the debtors' current and former employees would be

23   releasing parties.  We're not aware of a showing that those

24   former employees got notice or had a chance to opt out or

25   that they're getting consideration for having releases

1    imposed on them.  And the same thing, we would submit, goes

2    for current employees.  So we submit employee third-party

3    releases are non-consensual, as well.

4           We don't believe those releases satisfy

5    Continental, we don't believe they satisfy fairness, the

6    fairness hallmark, because releasing creditors will not seek

7    consideration for being subjected to the release.  And they

8    may not get any distribution under the plan at all.  It

9    doesn't appear to us that the majority of the release parties

10   have provided consideration to receive a release.

11          The necessity hallmark is absent, we submit,

12   because the releases are not needed for the debtors to

13   reorganize.  The debtors are liquidating and releases are not

14   needed for the debtors to finish their wind down and have

15   their remaining assets monetized and distributed to

16   creditors.

17          We would also -- we also believe that there are no

18   extraordinary circumstances here to distinguish this case

19   from any other Section 363 sale case.

20          So, for these reasons, we do not believe that the

21   releases satisfy the Third Circuit exacting jurisprudence on

22   non-consensual third-party releases.  Third-party releases

23   should not be imposed on general unsecured creditors who did

24   not return a ballot, should not be imposed on employees.

25          As to exculpation, as counsel indicated, the plan

1    defines "exculpated claim" to mean acts and omissions

2    relating to the Chapter 11 cases and arising after the

3    petition date and on or before the closing of the Chapter 11

4    cases.  And as we interpret that, the plan would exculpate

5    the exculpated parties for their post-effective-date acts and

6    omissions prospectively.  And as I read the liquidation trust

7    agreement, the trust could exit up to five years post-

8    effective-date.

9           No other estate fiduciary receives exculpation in

10   advance.  And some of those fiduciaries, such as the debtors'

11   professionals and the committee's professionals, are subject

12   to strict Rule 2014 disclosures and court oversight during

13   the administration of the case, whereas the liquidation trust

14   and trustee and its professionals will be subject to

15   significantly less court oversight post-effective-date.

16          If parties want to seek exculpation at the end of

17   the case, for example, in connection with a motion for a

18   final decree, they have the right to seek that.  But we

19   subject that prospective exculpation in advance, potentially

20   years in advance, depending on how long the trust operates,

21   is not appropriate.

22          We also object to Section 7.2 of the liquidation

23   trust agreement, which is filed at Docket Item 481, and is

24   incorporated into the plan.  Section 7.2 adopts the

25   exculpation provisions in the plan, but it also provides:

1          "In no event shall the trust, trustee, or

2          liquidation trust advisory board be liable for

3          indirect, punitive, special, incidental, or

4          consequential damage or loss, including, but not

5          limited to lost profits, whatsoever, even if the

6          trustee has been informed of the likelihood of such

7          loss or damages and regardless of the form of

8          action."

9          That provision should be stricken.

10          Back in, I believe it was the late '90s, in the

11    Daily International decision, Judge Walsh found that such a

12    provision was not a reasonable term of employment for estate

13    professionals, who, again, are subject to significantly more

14    court oversight during the case.  We're also concerned that

15    that provision erodes the exceptions built into exculpation

16    for wilful misconduct and gross negligence.  There is no

17    reason to give that immunity to a liquidation trustee or

18    trust and to give that immunity in advance.

19          The committee suggested that exculpation is not a

20    release.  We disagree with that.  Exculpation is a release.

21    A type of release, if you look at the plan, Article 9(c), the

22    language the plan uses says each exculpated party, quote, "is

23    released and exculpated from any exculpated claim."  So the

24    plan itself uses "release" language in the exculpation

25    provision.

1    So, to conclude, Your Honor, we submit that third-

2    party releases should not be imposed on general unsecured

3    creditors who did not return a ballot and it should not be

4    imposed on the debtors' employees.  We submit that

5    exculpation in the plan and the liquidation trust agreement

6    should not extend prospectively past the effective date.  And

7    also, the waiver of all indirect, punitive, incidental, or

8    consequential damages whatsoever should be removed from the

9    liquidation trust agreement.  And unless the debtors agree to

10   those changes, we respectfully submit the Court should deny

11   confirmation.

12   Unless Your Honor has any questions, that's all I

13   have.

14   THE COURT:  I do not.  But Mr. Hackman, you

15   indicated that you wanted to cross-examine Ms. Tsai and Mr.

16   Roach.

17   MR. HACKMAN:  Yes, Your Honor.  I wanted to cross-

18   examine Ms. Tsai to confirm that the solicitation materials

19   were sent to approximately 557 general unsecured creditors in

20   Class 7.  And I wanted to cross-examine Mr. Roach about the

21   holder of the claims in Class 5 and Class 6 --

22   THE COURT:  Okay.  Well --

23   MR. HACKMAN:  -- which is an entity --

24   THE COURT:  I'm sorry.  I don't want to cut you

25   off.  But if you want to cross-examine them, I would like to

1  have them sworn in and you actually cross-examine them.

2       MR. PACITTI:  Your Honor, if I may just interject.

3  Mr. Hackman and I talked a little bit yesterday about

4  stipulation to certain facts, and we can certainly stipulate

5  about what he just argued, and that is the numbers of ballots

6  that went out to Class 7 as being 557, and the numbers

7  returned are already on the declaration.  And the percentage

8  of ballot -- net ballots voted is 16.01 percent.

9       I think that's what you wanted to stipulate to, Mr.

10  Hackman.  If I'm misstating or if I missed something, I'm

11  happy to stipulate that that's the facts.

12       MR. HACKMAN:  That -- this is Ben Hackman for the

13  U.S. Trustee.  And with that, I don't need to cross-examine

14  Ms. Tsai.

15       THE COURT:  Okay.  And what about Mr. Roach?

16       MR. PACITTI:  Your Honor, if I may address that.

17  In terms of the proposed cross-examination of Mr. Roach, I

18  don't know that there's any objection by the U.S. Trustee as

19  it relates to Classes 4, 5, or 6 in any way, so I don't know

20  what the relevance of that cross-examination would be, but I

21  just wanted to throw that out.

22       THE COURT:  Okay.  I didn't hear the end of Mr.

23  Roach's [sic] comment, initially, as to what he wanted to

24  cross-examine Mr. Roach about, so ...

25       MR. HACKMAN:  That -- this is Ben Hackman for the

1    U.S. Trustee.

2          My understanding -- I'd like to try to clarify the

3    record.  My understanding is that an entity called "Furniture

4    Factory Note Holding, LLC" is the administrative agent for

5    the second lien debt in Class 5 and also holds the grid note

6    claims in Class 6.  And my understanding is they're connected

7    to Sun Capital Partners, of which the debtor did the

8    portfolio of -- the company is Sun Capital Partners

9    affiliates, just to make -- in case it wasn't clear, you

10   know, in case the Court had questions about why Class 5 and

11   Class 6 did not return a ballot.

12         MR. PACITTI:  Your Honor, I don't know why that's

13   relevant, but we can stipulate that that's correct.

14         THE COURT:  Thank you.  Does that --

15         MR. HACKMAN:  And Your Honor, I --

16         THE COURT:  Go ahead, Mr. Hackman.

17         MR. HACKMAN:  Yes, Your Honor.  I -- I'm sorry.  No

18   need to cross-examine Mr. Roach.

19         THE COURT:  Okay.

20         MR. HACKMAN:  Thank you, Mr. Pacitti.

21         THE COURT:  Thank you.

22         MR. PACITTI:  You're welcome.

23         Your Honor, can I just address a couple of things

24   that Mr. Hackman said?  Because I think he may have

25   misunderstood one of my arguments, and I want to apologize

1    profusely, if I could --

2              THE COURT:  Yes --

3              MR. PACITTI:  -- but --

4              THE COURT:  -- please.

5              MR. PACITTI:  When I was talking about Judge

6    Goldblatt's decision in Alex and Ani, I, in no way, meant to

7    implicate or insinuate in any way that Mr. Hackman should

8    have raised this or we should have done this at the

9    disclosure statement hearing.  I was really just pointing out

10   that that's another judge in our district that appears to be

11   on the side of the Indianapolis Downs cases and views

12   consensual releases as appropriate when, you know, adequate

13   disclosure is set forth.  And that's the only reason I -- we

14   cited to that.  I, in no way, was trying to insinuate that

15   Mr. Hackman should have done something different in these

16   cases or should have raised it at the disclosure statement or

17   otherwise.  So I just wanted to clarify the record with

18   respect to that, Your Honor.

19             THE COURT:  Okay.  Thank you.

20             MR. PACITTI:  And I don't know if you wanted to

21   hear a response or if you've heard enough, Your Honor.

22             THE COURT:  No, I would actually like to hear a

23   response specifically with respect to the U.S. Trustee's

24   argument regarding current and former employees recently.

25             MR. PACITTI:  Sure, Your Honor.  And I guess we

1    sort of view that as, you know, they're folks that are either

2    creditors or on our mailing matrix, so they've gotten notice.

3    The notice of confirmation hearing went to the entire mailing

4    matrix, which includes all former and current employees.

5    There's only a couple of employees currently, as it has been

6    for months now.

7            So we view them in the same bucket as any other,

8    you know, party-in-interest here who got notice, saw what was

9    required in order to object to the conspicuously set forth,

10   you know, plan provisions with respect to the releases.  So

11   we don't view that as any different, and that's the reason

12   that we believe it's appropriate here.

13           THE COURT:  Were employee claims satisfied in this

14   case?

15           MR. PACITTI:  They were, Your Honor.  You know,

16   everything pre-petition was paid.  There was a first-day

17   order, you know, paying, you know, anything that was accrued

18   pre-petition that was a carryover.  So we don't believe that

19   there's many, if any, claims left.

20           And also, Your Honor, there's -- there was a bar

21   date, obviously, that has gone past a long time ago.  So, to

22   the extent that there were any claims filed by employees,

23   they would be on the matrix; they would be an unsecured

24   creditor and would have gotten a ballot.

25           THE COURT:  Okay.  Does anyone else wish to be

1    heard with respect to confirmation of the plan?

2        (No verbal response)

3        THE COURT:  I do have one questions regarding the

4    trust, the trust document.  I want to make sure that I

5    understand this correctly.  Mr. Hackman, your position is

6    that this provision -- if the Court were to limit

7    exculpation, this provision has to correspondingly be

8    revised.  Is that correct?

9        MR. HACKMAN:  Sorry, Your Honor.  Can you hear me?

10       THE COURT:  Yes, I can.

11       MR. HACKMAN:  I'm sorry.

12       In the -- we submit that the provision in Section

13   7.2 of the liquidation trust agreement that would waive

14   consequential, punitive, indirect, et cetera damages should

15   be removed regardless of how -- of what the temporal extent

16   of the exculpation is, in part because we believe that

17   undermines the exceptions for gross negligence and wilful

18   misconduct.

19       THE COURT:  Mr. Pacitti, I didn't see where this

20   was addressed in the debtors' brief.  Could you address this

21   argument, please --

22       MR. PACITTI:  Yes.

23       THE COURT:  -- or the trustee's argument?

24       MR. PACITTI:  Your Honor, I think we viewed that

25   provision that was objectionable as relating to the

1   limitation of liability provision above, so -- and I see now

2   that there's a period, perhaps, that picks up.  So I would -

3   and again, I guess I would ask the committee if they would

4   agree to this, as well, because they were involved in this

5   hand in hand with us -- that, perhaps if we included the

6   exception for fraud, gross negligence, and wilful misconduct

7   that appears above as a lead-in to that sentence, that that

8   might solve it.  So, where it begins "in no event shall the

9   trust," we say, "except for fraud, gross negligence or wilful

10  misconduct," comment, "in no event shall the trust, trustee,"

11  blah, blah, blah, continue.

12          MS. LOTEMPIO:  Your Honor, this is Catherine from

13  Seward & Kissel on behalf of the Official Committee of

14  Unsecured Creditors.  And we're in agreement with Mr. Pacitti

15  on that.  I think we discussed that yesterday.

16          THE COURT:  Mister --

17          MS. LOTEMPIO:  And that was our belief of the

18  intent of the provision in the first instance.

19          THE COURT:  Okay.  Mr. Hackman, would that resolve

20  your issue with respect to that provision?

21          MR. HACKMAN:  It helps, Your Honor, but we still

22  sort of have a -- given that there is case law in the

23  District that refers to this type of provision as an

24  unreasonable term or provision of employment for a

25  professional that is subject to the strict requirements of

1    the Bankruptcy Code, to -- for it to be available for a post-

2    effective-date entity that's subject to significantly less

3    court oversight, we don't think is an appropriate protection,

4    it's -- for the liquidation trustee.

5         It's hard to know what is going to transpire over

6    the coming months or years.  And again, if the liquidation

7    trustee wants to see exculpation at the end of the case, when

8    it comes time to final decree the case, and make a showing

9    that there -- that there's a proper exception for wilful

10   misconduct and gross negligence, I think the Court and the

11   parties-in-interest could evaluate the request at that point.

12   We submit that that would be the proper time for adjudicating

13   exculpation and whatever liability there may or may not be

14   for the administration of the trust then.

15        THE COURT:  Okay.  Thank you.

16        Does anyone else wish to be heard with respect to

17   confirmation of the debtors' plan?

18        MS. LOTEMPIO:  Your Honor, this is Catherine

19   LoTempio from Seward & Kissel, again, on behalf of the

20   official committee.

21        I just wanted -- I don't know if you want me to

22   respond to the U.S. Trustee's point in the exculpation.  In

23   the trust agreement, I -- we just note that it's -- we

24   believe it's limited and that it's appropriate for the

25   trustee -- the liquidation trustee to have the protections of

1    an exculpation in performing its duties as a fiduciary under

2    -- as a fiduciary to the estate and in the context.  As long

3    as it's acting within its duties, it should be protected and

4    it should know, when it's performing its duties that it is

5    entitled to those protections and has those protections,

6    along with creditors or any other party-in-interest who's

7    considering potentially filing something against the

8    litigation [sic] trustee should know that the trustee has

9    those protections.  It's important to the operation of the

10   liquidation trust.  That's it, that's all I have.  Thank you.

11              THE COURT:  Thank you.

12              Does anyone else wish to be heard with respect to

13   confirmation of the plan?

14       (No verbal response)

15              THE COURT:  I have a few questions for the debtor.

16              One of the questions I have relates to the order

17   itself.  Paragraph 83 provides for extension of the trust.

18   And the reason I'm asking for this now is because it involves

19   a plan provision, so I want to make sure that I understand

20   this correctly.  I'm not sure what this provision means.

21   Does this provision mean that the liquidation trust can ask

22   the Court to extend the trust without IRS approval, or is it

23   saying the Court can extend separate and apart from IRS

24   approval?  You know, I appreciate that there are IRS

25   regulations for trusts and how to get them extended, and I'm

1      trying to figure out what exactly this provision means.

2            MR. PACITTI:  I think it's giving you the authority

3      to extend it, Your Honor, and perhaps it's not as artfully

4      drafted as perhaps it should be.  But if you read the second

5      sentence, it really talks about filing of a motion, and that

6      there's an extension pending approval of that motion.  I

7      believe that that was the import of this.  So I don't think

8      that we're saying that you can abrogate the IRS's role.

9            THE COURT:  Yeah, I just wanted --

10           MR. PACITTI:  I don't --

11           THE COURT:  You know --

12           MR. PACITTI:  -- think you can --

13           THE COURT:  -- if you're required --

14           MR. PACITTI:  -- do that.

15           THE COURT:  -- to get a favorable letter ruling --

16           MR. PACITTI:  Right.

17           THE COURT:  -- I am not abrogating the IRS rules.

18           MR. PACITTI:  Right.

19           THE COURT:  But if you're setting you get a bridge

20      order while you file or something like that, that's very

21      different.

22           MR. PACITTI:  That's, I think, what the import of

23      this section was meant to be, and we don't want to get the

24      IRS angry at any of us, Your Honor.

25           THE COURT:  Me neither, so -- all right.  Let me

1    just -- wait.

2            With respect to the proposed order, can the debtors

3    address Paragraph -- never mind.  I think that you've

4    satisfied that.  Sorry, I'm going through my notes here.

5            Oh, could you address, in Paragraph 1, the request

6    for a waiver of the stay of the confirmation order?

7            MR. PACITTI:  Your Honor, we don't -- we can -- we

8    don't need that.  Quite honestly, we're probably going to

9    wait to -- for the appeal period to go effective, in any

10   event.  So, if you're suggesting that you have an issue with

11   that, I don't have a problem with --

12           THE COURT:  I just wanted to make a record.

13           MR. PACITTI:  Yeah.  I mean, Your Honor, we asked

14   for it because we thought we'd go effective as soon as

15   possible.  Given there was an extant objection, depending on

16   how Your Honor rules, there may be an appeal period.  I don't

17   know whether closing or going effective moves that or not.

18   And given the Third Circuit's sort of discussions about

19   mootness, who knows what happens then?  So my inclination was

20   to wait the appeal period, in any event.

21           THE COURT:  Okay.  So are you intending to strike

22   that provision?

23           MR. PACITTI:  If Your Honor is fine and if the

24   committee is fine with that, we'd agree to it, to strike

25   that, as well.

1          MS. LOTEMPIO:  Fine with the committee, as long as

2     it's fine with the debtors.

3          THE COURT:  Okay.  All right.  We're going to take

4     a brief, five-minute break, and I'll come back and rule.

5     Okay?  Thank you.

6          MR. PACITTI:  Thank you, Your Honor.

7          THE COURT:  We stand adjourned.

8        (Recess taken at 11:02 a.m.)

9        (Proceedings resume at 11:10 a.m.)

10          THE COURT:  Good afternoon.  We are back on the

11     record in Furniture Factory Ultimate Holdings, L.P., Case

12     Number 20-12816.

13          This is the ruling on confirmation of the debtors'

14     plan.

15          First of all, I would really like to thank counsel

16     for the very helpful presentations today, as well as the very

17     thorough pleadings that you put before the Court on the

18     contested issues, it's very helpful.

19          I'm going to first address the U.S. Trustee's

20     objections to the plan.  The U.S. Trustee is objecting to the

21     plan on the basis that it contemplates an improper or a non-

22     consensual third-party release.  This objection is overruled.

23     I find that the third-party releases are consensual because

24     creditors did have the opt -- ability to opt out of the plan

25     release provisions.

1       The ballots contained language that was obvious and

2   conspicuous regarding the optional release selection and set

3   forth the text of the plan, Provision 9(d), including the

4   definitions of "release" and "releasing parties."  The ballot

5   further advised, in making no affirmative election to opt

6   out, the holder effectively releases all claims of the

7   released parties.

8       In addition, the notice of confirmation hearing

9   contained a text box explaining the opt out of the release

10  and also set forth the deadline to object to the releases in

11  the plan.

12      Section 1141 binds creditors to a plan, and

13  creditors need to speak up and object to release provisions,

14  just like they need to object to other plan provisions that

15  they disagree with.  Here, creditors did, in fact, speak up

16  and not grant the releases.  The tabulation declaration

17  reflects, of the creditors voting, 18 out of 81 in Class 7 --

18  that's 22 percent -- opted out of the third-party releases.

19      For these reasons, I find the releases are

20  consensual.  I note this finding is consistent with the

21  decisions in this district from the Indianapolis Downs line

22  of cases.

23      Also and significantly, the debtors have added

24  language in the confirmation order at Paragraph 86, providing

25  that all holders of claims-in-interests whose solicitation

1   packages were undeliverable are deemed to opt out of the

2   third-party releases.  And because these third-party releases

3   are consensual, the Court need not address the requirements

4   for non-consensual releases.

5        The U.S. Trustee objects to the exculpation

6   provision as overly broad, as it extends past the effective

7   date.  This objection is sustained.

8        First, exculpated parties are limited to estate

9   fiduciaries in this district.

10        Second, I find that exculpation is limited to

11   actions taken during the pendency of the cases and prior to

12   the effective date.  I will not prospectively exculpate

13   actions taken following the effective date, nor will I expand

14   exculpation to pre-petition acts.  These actions are covered

15   by releases.

16        And I believe that Mr. Hackman has made a good

17   point, and that parties could -- the trustee could come

18   forward at the end of the case in seeking a final decree,

19   seeking exculpation.  I make no judgment as to the validity

20   of that, but it is a possibility.

21        So the definition of "exculpated claim" in 43

22   should be revised to replace "closing the Chapter 11 cases"

23   with "effective date," and a corresponding change should be

24   made to the trust agreement.

25        Based on the record of these Chapter 11 cases, the

1  representations of the parties, and the record that has been

2  made, including the rulings with respect to the U.S.

3  Trustee's objections, I will enter the order confirming the

4  plan.

5        In terms of meeting the standards for confirmation,

6  the debtors have admitted into evidence the declarations of

7  Mr. Roach, which is uncontroverted and supports confirmation

8  of the plan.

9        In addition, Ms. Tsai's declaration with respect to

10 tabulation of votes explains the debtors have satisfied the

11 provisions of 1126 for obtaining support of a plan.

12       The debtors filed a comprehensive memorandum of law

13 in support of confirmation of the plan.  And while the

14 memorandum is not evidence, it is, nonetheless, part of the

15 record before the Court.  The memorandum lays out with

16 specificity how the debtors have satisfied their various

17 statutory burdens and requirements.  The memorandum also

18 addresses in detail the provisions of the plan, how the

19 debtors are compliant with respect to 1129 and, to the extent

20 applicable, 1123.  I am satisfied, therefore, that the

21 debtors have carried their burden under the provisions of the

22 Bankruptcy Code for confirmation of the plan.

23       MR. PACITTI:  Thank you, Your Honor.

24       Your Honor, I guess we'll revise the order.  I'm

25 trying to think if we should revise the plan, if that's

1   easier, and just attach it to the order, but we can do it

2   either way.  I'll speak to the parties and we'll submit

3   something under certification of counsel, Your Honor.

4           THE COURT:  Okay.

5           MR. PACITTI:  I guess this can --

6           THE COURT:  And --

7           MR. PACITTI:  -- wait until tomorrow.

8           THE COURT:  And please, whatever you submit, could

9   you make sure that you include a blackline --

10          MR. PACITTI:  Absolutely.

11          THE COURT:  -- and that Mr. Hackman and the United

12  States Trustee and the committee are included in the

13  discussions?

14          MR. PACITTI:  Absolutely, Your Honor.

15          MS. LOTEMPIO:  Your Honor, sorry.  One point of

16  clarification.  On the exculpation in the liquidation trust

17  agreement, is that to strike the provision in totality or can

18  the parties agree to that?

19          THE COURT:  I would ask -- I was suggesting that

20  you strike it in its totality, the provision starting with

21  "in no event."

22          MS. LOTEMPIO:  Okay.  Understood.

23          MR. PACITTI:  Understood.

24          THE COURT:  Are there any other questions?  Do we

25  have any other issues that we need to address today?

1          MR. PACITTI:  I think that's it, Your Honor.

2          Just so Your Honor's chambers is aware, I don't

3    think we'll get anything to you today.  So we'll reach out

4    tomorrow, hopefully get it to you early in the day, and we'll

5    reach out to chambers to let you know that everything has

6    been filed.

7          THE COURT:  Okay.  Thank you very much.

8          MR. PACITTI:  And we thank Your Honor --

9          THE COURT:  I --

10          MR. PACITTI:  -- and chambers.

11          THE COURT:  I do have -- I am in tomorrow, I have a

12    meeting in the morning, but I am in the afternoon, and of

13    course, I'll be here Monday, as well.

14          MR. PACITTI:  Great.

15          THE COURT:  Okay.

16          MR. PACITTI:  Thank you so much, Your Honor.

17          THE COURT:  Thank you.

18          MR. PACITTI:  Appreciate it.

19          THE COURT:  Have a good day.  We stand adjourned.

20          MR. HACKMAN:  Thank you, Your Honor.

21      (Proceedings concluded at 11:17 a.m.)

22                              *****

1                         CERTIFICATION

2              I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8

9

10   _____      September 16, 2021

11   Coleen Rand, AAERT Cert. No. 341

12   Certified Court Transcriptionist

13   For Reliable

14